JOHN CRABTREE, Appellant, *v.* JAMES B. CRAWFORD, Appellee.

### APPEAL FROM EDGAR.

This court will not interfere, when substantial justice has been done, and there is evidence to sustain the judgment of the court below.

Where it appears that A. bought two horses of B. for five hundred dollars, on a credit, one of the horses being lame at the time, but was warranted to recover; that A. afterwards sold the lame horse with the assent of B., the purchaser giving his note to B. for two hundred and fifty dollars, A. giving his note for the balance; Held, that A. could not set up in defense to a suit on his note, that the lame horse did not recover, especially after the lapse of time, when the note was given and without objection.

THIS was an action of assumpsit, brought by James B. Crawford, assignee of William D. Blackburn, against the appellant, on a promissory note for $250.  The declaration contains a special count, and the usual common counts; to which defendant pleaded the general issue; and it was agreed between the parties, that under that plea, everything which could be specially pleaded might be given in evidence.  A jury was waived, and the cause tried by the court.  The plaintiff offered in evidence the note of the defendant, as follows:

"Due William D. Blackburn, or order, two hundred and fifty dollars, for value received.  Paris, Dec. 14th, 1858.  JOHN CRABTREE."

The defendant then introduced as a witness, *Samuel Connelly,* who stated, that on the 22nd day of March, 1858, he was asked by William D. Blackburn, the assignor of the note sued on, and

John Crabtree, to listen to the recital of a trade which they had made, and asked the other to relate it to me, and one of them, I forget which, said that Blackburn had sold to Crabtree two horses for $500, to be paid in lumber, at $1.25 per hundred, half to be paid by June, and the balance by the first of September. One of the horses had a sore leg, and Blackburn said he warranted the leg to get well. The horses were not present. They were stallions. I understood the horses were in Blackburn's stable at the time. I think it was a stallion, the leg of which was warranted. I have some recollection about something being said about the other horse being lame, and Blackburn said it only had the scratches.

*H. S. Ketcham.* Knew about the note sued upon ; was in the counting room of Hunter & Fisher, and saw Blackburn writing a note ; Crabtree said the note was for horses. Saw Crabtree sign the note ; can't say whether Blackburn had the conversation or not ; might have heard it if he had listened.

*John J. Rankin.* Blackburn came to him ; he understood that witness and one Wiley had got one of the horses he had sold Crabtree, and that they were to pay for it, and that Crabtree would give his note for the other, for $250. Witness and Wiley gave the note ; Crabtree assented to it. Blackburn told me last fall he had sold Crabtree's note to Crawford, and that Crabtree was mad about it.

*Thomas Mark* testified, that he saw Blackburn sell the note to Crawford after it was due.

*Moses Crabtree.* Was son of the defendant. Crabtree lives with my father ; know of no other trade between Blackburn and him, except for the two horses spoken of. They were stable horses ; they were both lame ; they appeared to be stiff all over ; the bay horse was lame in all his limbs ; appeared to be lame in fore shoulder. In the spring of 1858, father got the horses ; the bay horse was sent to the farm, and Rankin and Wiley got him ; did not do much with him ; thought he was stove in the shoulder ; think he was worth about $100.

*A. B. Fants.* Crabtree left the horses spoken of in my stable a week or ten days. Saw the horses before Crabtree bought them ; am a farrier. Blackburn asked me to look at the horses once ; think the one had the sweeney ; it was a bay horse. Crabtree wanted me to doctor the horses. The bay horse appeared to be diseased all over, and specially in one shoulder. Saw the horse last fall again ; he was almost in the same situation ; would swell up, and his eyes close. I also doctored the gray ; don't think any man would have him.

*James Crabtree.* Took the bay horse to the farm after he was bought some time. I handled the horse and took great care

of him. The horses were stallions; the horse continued lame and stiff; was worth about $50.

*John Rankin.* Got the bay horse ; considered him stove ; was worth $250 if he had been sound. It was worth $50 to keep the horse and doctor the leg.

Upon this evidence, the court rendered judgment for the plaintiff for the amount of the note, from which defendant appealed, assigning for error that the judgment is contrary to the law, and evidence of the case.

A. GREEN, for Appellant.

JOHN SCHOLFIELD, for Appellee.

WALKER, J. It appears from the evidence that appellant, on the 22nd of March, 1858, purchased of Blackburn two horses, for the sum of five hundred dollars, payable in lumber, one half by the first of June, and the other by the first of September following. That one of the animals was lame at the time, and that Blackburn warranted it to recover. That appellant received the possession, and he afterwards let Rankin and Wiley have the horse which had been warranted, for which they, with the assent of appellant, on the 14th day of December, 1858, gave their note to Blackburn for two hundred and fifty dollars, and appellant at the same time gave the note sued upon for the remainder of the five hundred dollars. By this arrangement appellant was released from all liability for the amount for which Rankin and Wiley had given their note. There was some evidence tending to show that the horse had not recovered from this lameness. And it is urged as a defense, that there was a breach of warranty, and the damages claimed to have been thus sustained are sought to be recouped from this note.

The record fails to show that any price was fixed upon each of the horses, or whether they were regarded as of equal or unequal value. But from the subsequent arrangement of the parties, Rankin and Wiley considered the horse that was warranted as being worth two hundred and fifty dollars, because they gave that price for the animal. And it must be true that appellant thought the other animal of equal value, as he gave his note for the like sum. And it does not appear that he made any objection to this arrangement, or that he claimed any damages or deduction from the purchase money on account of a breach of the warranty. The conclusion is almost irresistible, after having the horse almost nine months, and then selling him to others, and giving his note after that period of time had elapsed, if there had been a breach of the warranty, that it would have

been claimed. This defense looks to us very much like an after-thought, and without any merit. If the breach had then occurred, and it was not claimed when the note was given, it was thereby waived. . If it did not occur till after he had sold the horse, he not having become liable on a warranty of the property, he has no right to urge that as a defense to this note. The entire matter seems to have been satisfactorily arranged by the parties at the time the note was given, and we are unable to see that appellant has sustained any damage, even if there was a breach of warranty, as he has sold the horse, and for aught that appears, for all or even more than he gave for him.

We are unable to perceive any error in this record for which this judgment should be reversed, and it is therefore affirmed.

*Judgment affirmed.*