# THE DROVERS' NATIONAL BANK

*v.*

## THE ANGLO-AMERICAN PACKING AND PROVISION COMPANY.

*Filed at Ottawa May 15, 1886.*

1.    BANKS AND BANKING — *certified check — liability thereon.*    A bank which certifies a check drawn upon it, is primarily liable for its payment, the same as upon a promissory note or bond given by it.

2.    SAME—*a bank receiving a check or bill, whether in payment, on account, or for collection—duty and liability in respect thereto.*    A bank taking a certified check on another bank, either as a payment, on account, or for the purpose, only, of collection, is entitled to show that the check has availed nothing, when the bank so receiving the same has discharged its duty by an effort to collect it.

3.    But if the bank receiving such check, either on account or for collection, sends the same directly to the debtor bank for payment, and the debt is lost in consequence thereof, the bank so transmitting the check must bear the loss.

4. It is not reasonable care in selecting an agent to collect a debt, to select the debtor himself, and place the evidence of the debt in his hands. The debtor can not be a disinterested agent of the creditor. It is such negligence on the part of a bank taking for collection a demand upon another bank, to transmit the same directly to the debtor, as will make it liable for the loss of the debt caused thereby.

5. Where the holder of a certified check on a distant bank places the same in the hands of a home bank for collection, it will be presumed that the usual mode of collecting in such cases shall be employed; but it can not be inferred that such check shall be surrendered to the bank liable for its payment, leaving it to use its pleasure as to the time and manner of payment.

6. An agent or bank with whom a check or bill is deposited for collection, must transmit it to a suitable agent to demand payment, in such manner that no loss can happen to any party, whether he is the depositor and indorser, or the indorsee and holder.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was assumpsit, in the circuit court of Cook county, by appellee, against appellant. The declaration contains but one count, and in that it is alleged that plaintiff gave the defendant bank a certified check of one Kieldsen, on Rice & Messmore, bankers of Cadillac, Michigan, to collect, but that the defendant failed to use due diligence in attempting to collect such check, and that while the defendant so held such check and was thus negligent, the drawees failed, never having paid said check or any part thereof, whereby the plaintiff lost the amount mentioned to be paid in said check, to-wit, $806.

By agreement of parties the cause was tried by the court without the intervention of a jury. It was stipulated between the parties that the following were facts in the case: On Saturday, October 27, A. D. 1883, one Meyers, as agent of the plaintiff, called upon one Kieldsen, at Cadillac, Michigan, and presented an account of the plaintiff against him, for which said Kieldsen drew his check, dated that day, for the sum of

$608.98, upon Rice & Messmore, bankers at said Cadillac. On the same day Rice & Messmore certified said check, and Meyers immediately mailed the same to the plaintiff, at Chicago. Said check was received by the plaintiff, at Chicago, on Tuesday morning, October 30, 1883, and on the same day the plaintiff, who kept an account with the defendant, deposited said check, with other checks, with the defendant, and received credit therefor on his pass book, in the usual way. On said 30th day of October, the defendant mailed the said certified check to Rice & Messmore, at Cadillac, for collection. Rice & Messmore received said certified check by mail on November 2, 1883, and on November 3 mailed to the defendant their check or draft for the amount, less one dollar for exchange, drawn on the Commercial National Bank of Detroit, Michigan, and surrendered to Kieldsen said certified check. Said draft on the Commercial National Bank of Detroit was received by the defendant about noon on November 5, 1883, and the defendant refused to accept the said draft, and on the same day sent the said draft back to Rice & Messmore at Cadillac, accompanied by a letter addressed to them, of which the following is a copy:

"UNION STOCK YARDS, CHICAGO, *Nov. 5, 1883.*
"*Rice & Messmore, Cadillac, Michigan:*

"GENTLEMEN—Your favor of the 3d received. I return your check herein, desiring that you send us draft on New York, as we keep no account in Detroit. To pay you one dollar for exchange, and then to pay exchange in Detroit, would be more than we could afford. We trust that you can as well send New York exchange, if not Chicago.

"Yours, truly,          W. H. BRINTNALL, *Cashier.*"

Said draft on the Commercial National Bank of Detroit was received by the defendant, and by the defendant returned to Rice & Messmore, as aforesaid, without any notice to or authority from the plaintiff.

After the said draft had been remailed, and about noon of· the next day, November 6, 1883, the defendant saw a paragraph in the "Chicago Tribune," of that day, to the effect that Rice & Messmore, bankers at Cadillac, Michigan, had failed on the morning of November 5, 1883, which statement afterward proved to be true. The defendant telegraphed immediately to the said Rice & Messmore, on learning of the said failure, to return said check of Kieldsen, or the draft on the Commercial National Bank of Detroit, which request was renewed almost daily, by telegram or letter, until the 15th day of November, 1883, when the defendant telegraphed J. H. Hixson, Cadillac, and received the following answer by telegraph:

"*To the Drovers' National Bank:*

"Can't do anything. Rice and Messmore both absent from the city.                                          J. H. HIXSON."

On the same day the defendant telegraphed to the Commercial National Bank of Detroit, as follows: "Is Rice & Messmore draft on you good for $688? Answer." To which telegram the defendant received a dispatch in reply, saying, "No."

On the 5th day of December, 1883, the aforesaid draft on the Commercial Bank of Detroit was again received by the defendant, it having been mailed to the defendant by the assignee of said Rice & Messmore. After the said last mentioned receipt of the said draft, and on the said 5th day of December, 1883, the defendant notified the plaintiff of its non-payment and return, and offered to surrender the said draft to the plaintiff, with proper indorsement, for collection; that the plaintiff refused to receive the said draft, and that the same is now in the hands of the defendant; that on the 15th day of December, 1883, the defendant, in writing up the bank book of the plaintiff, charged up the amount of the said collection against the plaintiff as of said 5th day of Decem-

ber, 1883, and notified the plaintiff of said action, and that the plaintiff refused, and still refuses, to assent thereto.

It is further stipulated that the said Rice & Messmore were bankers in good standing at Cadillac, Michigan, up to the time of their failure, and that the said check, if it had been presented to them and currency therefor demanded at any time prior to the said failure, would have been paid; and that at no time subsequent to the said failure would the said draft have been paid by the said Commercial National Bank of Detroit, if the same had been presented to the said bank for payment.

There was a further stipulation that the following letter might be read by the appellee as evidence of the facts therein stated:

"CADILLAC, MICHIGAN, *June 15, 1885.*

"*Messrs. Page & Booth:*

"GENTLEMEN—In reply to yours of the 8th inst., in regard to the standing of J. H. Hixson, banker, at the time of the failure of Rice & Messmore, we will answer as follows: Mr. J. H. Hixson commenced banking and general bank collection business on the 1st of June previous to the time R. & M. failed (in November.) His standing from the time he commenced business has always been good, as far as we are able to say. His Chicago correspondent at the time of the failure was the Merchants' National Bank of that place.

(Signed)                    FRED. S. KIELDSEN,
                    *Receiver for Rice & Messmore, Bankers.*"

Some evidence was introduced on behalf of defendant that in sending the check to Rice & Messmore the defendant was guided by the reports and lists of bankers in its office, which showed no other bankers at Cadillac at the time, and also evidence tending to show that bankers in Chicago, on receiving drafts, etc., on country banks, where there is no other bank at the place in good standing than that on which the collection is received, to send the collection directly to the bank on which

the draft is drawn.    The court rendered judgment for the plaintiff.    That judgment was affirmed on appeal to the Appellate Court for the First District.    This appeal is from that judgment.

Messrs. SLEEPER & WHITON, for the appellant:

The measure of our duty when we received the check was, that we would use reasonable care, as bankers, in attempting to collect it, (Morse on Banking, 2d ed. 396,) and, there being no specific instructions, that we would resort to the usual means to secure the payment.    *Fay* v. *Strawn*, 32 Ill. 295; *Chandler* v. *Hogle*, 58 id. 46.

The appellee was bound to take notice of the usual rules and regulations of Chicago banks in collecting checks on country banks.    Morse on Banking, 398.

That we used reasonable and ordinary care, under the admitted facts, see Daniell on Negotiable Instruments, sec. 1599 a; Morse on Banking, 281, 396; *Freeholders* v. *State Bank*, 32 N. J. Eq. 467; *Indig* v. *City Bank*, 80 N. Y. 200.

Daniell, in his work on Negotiable Instruments, (3d ed.) sec. 1599 a, says: "Since the second edition of this work the method of presenting negotiable paper at a bank by letter sent by post directly to the bank, has been approved in New York. * * * A check comes evidently within the same principle." Late English cases sustain the same doctrine.    *Bailey* v. *Bodenham*, 111 E. C. L. 294; *Heywood* v. *Pickering*, 9 L. R. Q. B. 428; *Prideaux* v. *Gridell*, 4 id. 428; *Briggs* v. *Central National Bank*, 89 N. Y. 182.

Messrs. PAGE & BOOTH, for the appellee:

It was the duty of the appellant bank in which the check was deposited for collection, either to decline the duty, or if it assumed the responsibility, to select a proper agent to make collection.    Morse on Banking, (2d ed.) 415, 416; 1 Daniell on Negotiable Instruments, (3d ed.) sec. 342; *Insurance Co.* v. *Alton City Bank*, 25 Ill. 246.

The drawer of a check, or the person primarily liable for its payment, was not the proper agent to employ to make collection thereof.   By certifying the check, Rice & Messmore became solely and primarily liable, and the only persons to whom appellee could look for payment.   Daniell on Negotiable Instruments, secs. 1601, 1603.

Mr. Justice Scholfield delivered the opinion of the Court:

Assuming, first, that appellant is not chargeable with knowledge of the existence of any other bank than that of Rice & Messmore, at Cadillac, Michigan, and second, that all the information it had, or could reasonably obtain at the time, in respect to the financial standing of Rice & Messmore, was, that they were solvent,—were Rice & Messmore suitable agents to whom to transmit the certified check for collection after it was placed by appellee in appellant's possession?   We do not think it is of much consequence whether appellant took the check as a payment, on account, or for the purpose, merely, of collection, for in either view it is entitled to show that the check, if the bank has discharged its duty by an effort to collect it, has availed nothing.   Nor do we regard the evidence that certain banks in Chicago were in the habit of transmitting checks drawn on other banks, to those banks for collection, as affecting the present question.   That evidence hardly comes up to the requirement of this court in regard to proof of a common law custom, as laid down in *Turner* v. *Dawson,* 50 Ill. 85, and subsequent decisions of like import; but if it did, that custom does not include cases in which certified checks are sent for collection to the banks by which they are certified. In the cases to which the evidence relates, there is no primary liability on the part of the bank to which the check is sent, but in the case of a certified check, the bank is primarily liable for its payment.   So far as affects the present question its position is precisely what it is where it makes its promis-

sory note, bond or other evidence of original indebtedness. (*Bickford* v. *First National Bank,* 42 Ill. 242, *et seq.*) The same person can not be both debtor and creditor at the same time and in respect of the same debt. How, then, can he who is debtor, be, at the same time and in respect of the same debt, the disinterested agent of the creditor? Can it be said to be reasonable care in selecting an agent, to select one known to be interested against the principal?—to place the principal entirely in the hands of his adversary? The interest of the creditor, when his debtor is failing, is that steps be taken promptly and prosecuted with vigor to collect his debt. But at such a time the inclination of the creditor quite often, and it may be sometimes his interest, too, is to procrastinate. The debtor may often be interested in bringing about a compromise with his creditors, whereby his debt may be discharged for less than its face; but the creditor whose debt can all be collected by legal proceedings can never be interested in producing that result. Surely it could not be held reasonable care and diligence in an· agent holding for collection the promissory note given by one individual to another individual, to send the promissory note to the maker, trusting to him to make payment, delay it, or destroy the evidences of indebtedness and repudiate the transaction, as his conscience might permit. If this would not be held to be reasonable care and diligence, why should the same conduct be held to be reasonable care and diligence when applied to a bank?

It is to be borne in mind appellant was not compelled to accept this check for collection. It assumed the burden voluntarily, and it ought to have known that the certified check was not delivered to it merely to have it exchanged for the draft of Rice & Messmore on some other bank, for if this had been desired, it ought to have known that appellee would have obtained such a draft instead of the certified check. If appellant had no correspondent or agent at Cadillac through whom to make collection, it should have so informed appellee,

and then acted on the directions of appellee. This would have imposed no hardship, and would have protected all. It is true that when appellee placed the check in the hands. of appellant, it was to be presumed that it was intended that appellant should collect by the ordinary and usual mode of collecting in such cases, but neither from facts proved nor as a matter of law was it to be inferred that the check was to be surrendered to Rice & Messmore, to use their pleasure as to the time and manner of payment and the disposition of the check. If appellant was willing to take the check without special stipulations, appellee was authorized to assume therefrom that it was able to collect, and that it had a proper agent through whom to do it promptly.

*Indig* v. *City Bank*, 80 N. Y. 396, cited by counsel for appellant, is entirely different in its material facts from those in the present case, as we conceive. There, the bank owed no primary duty to pay. The note was sent to it for collection, not from itself, but from the maker of the note. Its liability was solely that of an agent for collection. In the recent case of *Merchants' National Bank* v. *Goodman*, the Supreme Court of Pennsylvania, however, lay down the rule directly the opposite of that laid down by the New York Court of Appeals in *Indig* v. *City Bank*. The suit there involved the question whether the bank on which a check was drawn, was a suitable agent to which to transmit the check for collection, and the court held that it was not. The court among other things said: "We think the principle may be stated as a true one, as the plaintiff's counsel have presented it, that no firm, bank, corporation or individual can be deemed a suitable agent, in contemplation of law, to enforce, in behalf of another, a claim against itself. The only safe rule is to hold that an agent with whom a check, or bill is deposited for collection, must transmit it to a suitable agent, to demand payment in such manner that no loss can happen to any party, whether he is depositor and indorser, or

the indorsee and holder.   *   *   *   We interpret the cases
to which we have referred as establishing the rule of trans-
mission to a suitable correspondent or agent, to mean that
such suitable agent must, from the nature of the case, be
some one other than the party who is to make the payment.
By no other rule can the rights of indorsers be protected, if it
is the interest of the party who is to make payment, to hinder,
postpone or defeat payment.   This imposes no hardship on
the institution undertaking to transmit for collection, which
can always protect itself by stipulating that special instruc-
tions by the depositor shall be given, which will save the col-
lecting bank from all risk or peril."

It is unnecessary to say that we concur in these views any
further than they are applicable to the facts before us.

We find no cause to disturb the judgment below, and it is
therefore affirmed.

*Judgment affirmed.*