95   277<br>p117  774

## BAILIE *v.* THE AUGUSTA SAVINGS BANK.

1. Where a check upon a bank in North Carolina, payable to the order of a named person, was by his indorsement made payable to the order of another person, described as "trustee," who resided in Georgia, and the latter, after indorsing the check in blank, delivered it to his *cestui que trust,* who deposited it in a bank in the city of her residence, of which she was a regular customer and with which she kept an account, and her account was thereupon credited with the check as such and not as cash, and it was not the intention of the parties that the title to the check should pass to the bank as absolute owner, but that the latter should undertake its collection for the benefit of the depositor, the bank was not liable for the value of the check as a purchaser of the same.
2. Where under the circumstances above indicated a bank received for collection from a customer a check which by the exercise of proper diligence might have been collected, it became, in the absence of any express or implied contract to the contrary, liable for any neglect of duty whereby the collection of the check was defeated, whether such neglect arose from the default of its own officers or from that of its correspondent or agent to whom it may have sent the check for collection, and in such case it would be immaterial whether such correspondent or agent was the bank upon which the check was drawn or another.

January 14, 1895.

Complaint. Before Judge EVE. City court of Richmond county. May term, 1894.

Suit was brought by Sarah R. Bailie against the Augusta Savings Bank for $1,000 and interest, claimed to be due on account of the non-payment by the bank of the principal sum on demand, which sum was claimed to have been deposited with the bank for her by her trustee. The jury found for the bank, and the plaintiff excepted to the refusal of a new trial. Among other evidence introduced was the following statement of facts agreed to by both sides: Prior to November 21, 1891, plaintiff had been a depositor with defendant, having a regular pass-book. On that day a deposit was made by her, and the following entry was made on the passbook: " Check on First National Bank of Wilmington, $1,000." This check was:

"No. 86. Wilmington, North Carolina, Nov. 19, 1891. First National Bank of Wilmington. Pay to the order of E. S. Tennant, Secretary, One Thousand Dollars. $1,000. Carolina Interstate B. & L.
Per C. E. Borden, Treasurer."

It was indorsed: " Pay to the order of George A. Bailie, trustee. E. S. Tennant, secretary." Also, " George A. Bailie, trustee for Sarah R. Bailie and children." Defendant indorsed it thus: " Pay to the order First National Bank, for account Augusta Savings Bank, Augusta, Ga. W. B. Young, cashier." On the same day defendant forwarded the check to the First National Bank of Wilmington, with a letter stating that the check is inclosed "for collection and return," and further: "Protest all unpaid papers at once, unless otherwise instructed." The check was received by the First National Bank of Wilmington on Monday, November 23, 1891, and such receipt acknowledged in a letter written to defendant on that day. The First National Bank of Wilmington charged the same to the account of C. E. Borden, treas-

urer, who had to his credit that day $1,596.71, leaving a balance to his credit of $596.71. The Interstate B. & L. A. had no account in its corporate name on the books, though C. E. Borden was its treasurer, and the money of said corporation was credited to his account as such. On Wednesday morning, November 25, 1891, the First National Bank of Wilmington announced that it had suspended payment. It received deposits and paid checks on the 24th up to two o'clock P. M., the regular hour for closing the bank. The name of the Augusta Savings Bank does not appear upon the books of the First National Bank of Wilmington in any way except upon the collection book. Upon the appointment of a receiver for the last named bank, he found therein a letter addressed to the Augusta Savings Bank, inclosing a check on New York for the amount of this collection of $1,000, less ten cents. Defendant wrote to said receiver, requesting him to return the check which had been so forwarded for collection ; but he refused to surrender it, claiming that it was a voucher. He has since returned it to the drawer of it, and admitted the claim of the drawer for the balance to his credit. The first information of the failure of the Wilmington bank was received by George A. Bailie, plaintiff's husband, from the president of the National Bank of Augusta. On the day after the failure, Percy May, the teller of the Augusta Savings Bank, called upon Bailie and told him the bank had failed, and that his check was drawn on. Neither plaintiff nor her husband had, previously to the failure, heard a word affecting the solvency of the bank; nor, at the time of the deposit and the transmission of the check, had the defendant any notice or knowledge of any insolvency of the Wilmington bank. Upon information of the failure, defendant charged off on plaintiff's deposit book the amount of said deposit; she notified the Carolina Interstate Building & Loan Associa-

tion of the fact, but the association refused to recognize any liability on its part. This association was and still is in good standing financially, being a corporation of North Carolina. H. M. Borden, the cashier of the First National Bank of Wilmington at the time of the drawing of the check and up to the failure of the bank, was vice-president and a director of the building and loan association. George A. Bailie, plaintiff's husband, was an officer of the Augusta branch of said association during the time referred to, and had negotiated for the trust estate of his wife and children a loan on real estate in the city of Augusta, upon which improvements were being erected; and it was upon this property that this money was to be expended for the purpose of paying for the improvements. At the time of the transmission of the check for collection there was, and still is, in the city of Wilmington another bank which was and is in good standing credit, to wit the Bank of Hanover.

FRANK H. MILLER and WILLIAM K. MILLER, for plaintiff. JOSEPH R. LAMAR, for defendant.

SIMMONS, Chief Justice.

1. In the absence of anything indicating a different understanding, a bank which in the ordinary course of business receives from a depositor a check upon another bank and credits it on his deposit-book, not as cash, but as a check, will not be held to be an absolute purchaser of the check. "If a bank does not wish to assume the relation of a debtor for the paper to the depositor, this intention may be manifested in a very explicit manner by crediting the paper as paper." St. Louis etc. Ry. Co. *v.* Johnston, 23 Blatch. 492; Thompson *v.* Giles, 2 Barn. & Cress. 422; 2 Morse, Banks, §583. This the bank did in the present instance, the entry on the depositor's pass-book being: "Check on First National Bank of Wilmington, $1,000." Nor will the mere fact that the

depostor is allowed to check against the credit change the import of the transaction so as to preclude the bank from charging back the amount of the credit if the check is not paid. See on this subject, 2 Morse, Banks, §§583–587, and authorities cited.

2. The court instructed the jury, that "if the Augusta Savings Bank in the ordinary course of business selected the First National Bank of Wilmington to collect the check, and the bank of Wilmington negligently failed to collect the same, or if it collected the money and failed to remit, the savings bank is not liable to the plaintiff for such negligence or failure." Error was assigned upon this instruction and others to the same effect, and it was contended that, in the absence of any agreement to the contrary, a bank which receives a check from a customer for collection is liable to the customer for any negligence whereby the collection of the check is defeated, whether such negligence is that of its own officers or that of an agent or correspondent to whom it sends the check for collection. In support of the holding of the court below, various decisions are relied on which hold that if the check is not payable in the place where the bank which receives it for collection is situated, but has to be sent to a distant place to be collected, the bank receiving the check from the customer is not liable for the default of the agent to whom it sends the check for collection, if it has exercised due care in the selection of such agent. These decisions are based upon the view that in such case the customer, knowing that the check cannot be collected by the ordinary officers or servants of the bank, but that this service must be performed by a sub-agent at the place where the check is payable, impliedly authorizes the selection of such sub-agent, and thereby assumes the risk of any failure of duty on the part of the latter; and that the benefit which may accrue to the bank, where no specific

compensation is received for the service, is not a suffi-
cient consideration from which to imply an undertaking
on the part of the bank to assume that risk itself.    Dor-
chester & Milton Bank *v.* New England Bank, 1 Cush.
177; Jackson *v.* Bank, 6 Har. & J. 146; Stacy *v.* Bank,
12 Wisc. 629; Ætna Ins. Co. *v.* Bank, 25 Ill. 243; East
Haddam Bank *v.* Scoville, 12 Conn. 303; Daly *v.* Bank,
56 Mo. 94; Bank of Louisville *v.* First Nat. Bank, 8
Baxt. 101; Guelich *v.* Bank, 56 Iowa, 434; Third Nat.
Bank *v.* Vicksburg Bank, 61 Miss. 112; First Nat. Bank
*v.* Sprague (Neb.), 51 N. W. Rep. 846.    And see 1 Morse,
Banks, §268 *et seq.*

On the other hand, there are numerous decisions up-
holding the rule of liability contended for by the plain-
tiff in error.    This is the rule laid down by the Supreme
Court of the United States.    See Exchange National
Bank *v.* Third National Bank, 112 U. S. 276, in which
the question is elaborately discussed.    The decision in
that case was unanimous, and the case of Bank of Wash-
ington *v.* Triplett, 1 Peters, 25, which was relied on in
some of the cases above cited, as authority for the con-
trary view, is there explained and distinguished.    This
is also the rule in England.    See decision of the House
of Lords in Mackersy *v.* Ramsays, 9 Cl. & Fin. 818, s. c.
3 English Ruling Cases, 762; also, Van Wart *v.* Wooley,
3 B. & C. 439, s. c. 5 D. & R. 374.    And the same rule
has been adopted in the States of New York, New Jer-
sey, Indiana, Ohio, Michigan, Minnesota and Montana.
Allen *v.* Bank, 22 Wend. 215, 34 Am. Dec. 289; St.
Nicholas Bank *v.* State Nat. Bank, 128 N. Y. 26, 13
Lawy. Rep. Annot. 241; Titus *v.* Bank, 25 N. J. Law,
588; Tyson *v.* Bank, 6 Blackf. 225 ; American Ex. Co.
*v.* Haire, 21 Ind. 4, 83 Am. Dec. 334; Reeves *v.* Bank,
8 Ohio State, 465; Simpson *v.* Waldby, 63 Mich. 439;
Streissguth *v.* Bank, 43 Minn. 50; Power *v.* Bank, 6
Mont. 270.    See also, Kent *v.* Dawson Bank, 13 Blatch.

237, Taber *v.* Perrott, 2 Gall. 565.　The question has not been dealt with in any prior decision of this court.

In our opinion the sounder doctrine is that which holds the bank liable.　The collection of checks, drafts and other commercial paper constitutes an important feature of the business of banking as generally conducted, and for the transaction of this branch of their business banks have their regular correspondents in different parts of the country.　In the selection of the correspondent the customer for whom the collection is to be made is not consulted.　As a rule he does not know the name or the financial standing of the correspondent, and it is not contemplated that they shall have any communication with each other.　Under these circumstances we think a customer from whom a bank receives paper for collection has a right to assume, in the absence of any agreement to the contrary, that the undertaking of the bank comprehends the whole service to be performed, and that the agent employed by the bank in this service is its own agent, and not the agent of the customer.　So treating the undertaking, the case falls within the general rule of agency, that by the employment of under agents to perform a part of the work which he has contracted to do, the employer becomes responsible to those with whom he contracts or deals in his business, and will be held liable for the negligence or omission of any duty of his agent in the course of his employment.　There seems to us to be no good reason why a different understanding should be inferred and a different rule of liability applied because the bank cannot make the collection itself but must employ an agent for that purpose.　"The general rule of law that an agent is liable for a sub-agent employed by him, is not confined to cases where the principal has reason to suppose that the act may be done by the agent himself without employing a sub-agent."　(Lord Campbell, in Mackersy *v.* Ramsays, *supra.*)

This rule is applied to ordinary collecting agencies receiving claims for collection at distant places (Wharton, Agency, §544, and cases cited; Hoover *v.* Wise, 91 U. S. 308; Bradstreet *v.* Everson, 72 Penn. St. 124); and we do not see any substantial difference between the case of such an agency and that of a bank which receives such claims for collection.

It makes no difference that the bank does not charge anything for the collection. The benefits which the bank derives generally in the making of such collections, from the use of the funds while in its custody, the advantages which may arise from business associations, and the profits on exchange, are held to be, and we think may properly be regarded, as a valuable consideration for the undertaking and as sufficient to uphold the liability incident thereto. (See Exchange Nat. Bank *v.* Third Nat. Bank, 112 U. S. 288; Titus *v.* Bank, 35 N. J. Law, 588, and other cases cited, *supra.*) What was said in the case of *Merchants Bank* v. *Guilmartin*, 88 *Ga.* 804, as to the insufficiency of casual or incidental benefits to constitute the bank a bailee for hire, has no application in a case like this. That was the case of a special deposit of bonds, and the bank of course had no right to make use of the deposit.

The doctrine that a bank is responsible for the acts of its sub-agents, in cases of this kind, is not only, it seems to us, in accord with the principles governing the law of agency, but there are considerations affecting the general welfare of the commercial community which commend it to us as a wise rule of commercial law. "Any other rule," as is said by Mr. Daniel in his work on Negotiable Instruments, "opens the door to carelessness in the conduct of banking business, which should be conducted with every safeguard to the customer who intrusts his business to the keeping of such agents. If they are averse to dealing with distant and unknown

parties, they should decline undertaking the collection or handling of the paper; and if they assume it, they should do so for sufficient compensation, and be held responsible." (Vol. 1, §342.)

Under the agreed facts in this case, there can be no question as to the negligence of the Wilmington bank. It received the check on Monday, November 23d, with a letter stating that the paper was inclosed "for collection and return," and directing that all unpaid papers be protested at once unless otherwise · instructed. Up to the close of banking hours on the following day, it received deposits and paid checks, and on 'Wednesday the 25th, suspended payment, having made no remittance for this check. It then had to the credit of the drawer an amount considerably in excess of the amount of the check. It was contended that the bank was not bound to pay the check, because it had no account upon its books in a name corresponding to the signature on the paper. There is no merit in this contention. Although the check was drawn by C. E. Borden as treasurer of the "Carolina Interstate B. & L.," and there was no account upon the books of the bank in the name of the "Carolina Interstate B. &. L.," and none in which he was designated as treasurer of such a concern, the bank did have an account in the name of "C. E. Borden, treasurer," the money of the corporation referred to— the Carolina Building and Loan Association—was credited upon that account, and the bank recognized the check as drawn thereon by charging it accordingly.

There are decisions sustaining the contention of the plaintiff in error, that the defendant was negligent in sending the check directly to the bank upon which it was drawn, there being at that time in Wilmington another bank which was in good standing and credit. See Merchants Nat. Bank *v.* Goodman, 109 Penn. St. 422 ; Drovers Nat. Bank *v.* Anglo-American P. P. Co.,

117 Ill. 100, s. c. 57 Am. Rep. 855; German Nat. Bank *v.* Burns, 21 Pac. Rep. 714, 12 Colorado, 539; Anderson *v.* Rodgers (Kansas), 36 Pac. Rep. 1069; First Nat. Bank *v.* Fourth Nat. Bank (U. S. Circuit Court of Appeals, Sixth Circuit), 56 Fed. Rep. 967; Farwell *v.* Curtis, 7 Biss. 160. And see 1 Daniel, Neg. Instr. (4th edition), §328a; 1 Morse, Banks (3d edition), §236. The view we take of the liability of the defendant for the negligence of the Wilmington bank, however, renders it unnecessary to pass upon this question. It is not likely that this question or others presented by the record will arise again in this case.    *Judgment reversed.*