AUTEN v. MANISTEE NATIONAL BANK.

Opinion delivered December 9, 1899.

1. PROMISSORY NOTE—LIABILITY OF INDORSER.—To a bank sued as indorser of a note it is no defense that demand and protest of the note was not made if the failure to make demand and protest was due to such bank's negligence, the note having been sent to it for collection. (Page 248.)

2. BANK CASHIER—AUTHORITY.—The cashier of a national bank has authority to indorse negotiable paper owned by the bank, and the bank is not relieved from liability as indorser of a note by reason of the cashier's fraud unless the indorsee had notice of such fraud. (Page 250.)

3. NEGOTIABLE INSTRUMENT—PLACE OF DEMAND.—Where a bank designated as the place of payment of a note which it has indorsed has become insolvent, demand of payment may be made and notice of nonpayment given to the bank examiner in possession. (Page 251.)

Appeal from Pulaski Circuit Court.

Jos. W. MARTIN, Judge.

Cockrill & Cockrill, for appellant.

Without the allegation of the notice of dishonor, or of facts which show an excuse, the complaint alleged no cause of action against the indorser. Wood's Byles, Bills & Notes *306. The collecting agent does not assume the responsibility of doing anything more than making demand upon the maker and notifying the principal of the result. 1 Morse, Banks, § 232; 1 Dan. Neg. Inst. § 331; Story, Bills, § 232; 5 Mason, 366. The sending of the note to the indorser bank for collection by it is evidence that it was not looked to for payment. 117 Ill. 100; 71 Mo. App. 451. Knowledge of appellant as to nonpayment of the note did not dispense with the necessity of notice of dishonor by the holder. Benj. Chal. Bills and Notes, 182; Story, Bills, §§ 376–7; 3 Pet. 87; 7 Pet. 291; 16 S. & R. 157. The indorsement of the appellant having been for accommodation, there is no presumption that the cashier communicated it to the bank. 65 Ark. 543; 37 Atl. 550; 35 Atl. 1053; 50 N. E. 1079. Where the notary's certificate of protest mis-

describes the note, the burden is on the holder to show such fact, and explain it. 1 Comst. 413; 12 Barb. 245; 1 Comst. 413; S. C. 2 Seld. 19. The notice of dishonor must be such as to apprise the indorser of the dishonor of the identical note in question. Story, B. & N. § 349; 23 Wend. 626; Chitty, Bills, 501; Byles, Bills, 204; Mees. & Wels. 437; 11 Wheat, 436; 11 M. & W. 809; 1 Comst. 415; 9 Peters, 33; 5 Seld. 279; 9 Ala. 631; 19 Hun, 518; S. C. 75 Am. Dec. 361. Borrowing money is out of the usual course of banking business, and the one who loans it must, at his peril, see that the officer or agent of a national bank, who offers to borrow money for it, has special authority to do so. 152 U. S. 346; 13 C. C. A. 47; S. C. 65 Fed. 573; 21 C. C. A. 319, 323; S. C. 75 Fed. 296, 300; 55 Fed. 465; Ball, Nat. Banks, 54; Mechem, Agency, §§ 291, 285. The directors of national banks are the proper ones to manage its affairs. Rev. Stat. U. S. § 5145. The performance of these duties cannot be delegated. 1 Morse, Banking, §§ 116, 117; 3 Story, 411, 425; 12 R. I. 164. In the business of banking, re-discounting commercial paper is only a method of borrowing money. 8 Wheat. 338; 104 U. S. 277; 14 Fed. 662; 15 Johns, 358, 392; 17 N. Y. 507, 515; 26 Ohio St. 141, 151; 157 Mass, 548, 550; 2 Harr. (N. J.) 191, 206, 207, 209, 211; 52 Md. 78, 129; 42 Md. 581, 592; 14 Ill. App. 566, 570; 48 Mo. 189; 23 Minn. 198; 20 Kas. 440, 446, 447, 450, 451; 3 McLean, 587, 589; 8 C. C. A. 320; 76 Fed. 339, 341, 344; 1 Batty, 273; 8 Wheat. 338; 104 U. S. 271; 15 Johns. 358, 392; Bouvier's Dict. *Discount*; Webst. Dict. *Discount*; Ency. Dict. *Discount*; 50 Conn. 167; 28 W. Va. 653; 9 Metc. 306, 314; 28 W. Va. 653; 63 Ark. 413; 23 Minn. 198; 52 Md. 82; 62 Ky. 216; 157 Mass. 548. Any attempt by the cashier to negotiate appellant's notes was a criminal offense and a nullity. Sand. & H. Dig., § 1004; 62 Ark. 33; Rev. Stat. U. S. § 5209; 164 U. S. 347; 9 Wall. 362. The cashier's mere assumption of authority to bind the bank raises no presumtion that he really possessed such authority. 4 Thompson, Corp. §§ 4880, 4882; 62 Ark. 33; S. C. 34 S. W. 89; 152 U. S. 346; 5 Wheat. 326; 21 How. 356; 7 Wall. 666; 130 U. S. 416; 2 Mor. Corp. § 608. The protection

which commercial usage throws around negotiable paper can not be used to establish the authority of an agent to issue or indorse it. 7 Wall. 666, 676; 1 Dan. Neg. Inst. §§ 273, 279; 109 N. Y. 512, 525, 526; 62 Ark. 33; 93 Ky. 525; 95 U. S. 557; 5 Denio, 567; 89 Va. 290. Even if the board had delegated the cashier to run the bank, his authority would not have extended to the borrowing of money or indorsing of paper for that purpose. 47 N. J. Eq. 357; 7 Wend. 31; 5 Wend. 567; 152 U. S. 346. There was no ratification by the directors of the act of the cashier. 152 U. S. 346; 143 Mass. 250; 12 Allen, 493; 141 U. S. 132. Nor do the facts show that the appellant ever received any of the proceeds of the notes. 69 Fed. 131; 66 Fed. 34; S. C. 13 C. C. A. 313; 66 Fed. 694; S. C. 14 C. C. A. 61; 65 Fed. 573; 3 Dill. 44; 58 Fed. 638. Further on the question of satisfaction see, 54 Ia. 86; 3 Dill. 403; 95 U. S. 557; 36 Kas. 284; 113 Mass. 291; 152 U. S. 346, 352; Mechem, Agency, § 148; 150 Mass. 209; 7 Gray, 287; 109 Mass. 214; 128 Mass. 503.

*Dodge & Johnson,* for appellee.

There was no error in the refusal of the court to give the first, second, third, fourth and tenth instructions asked by appellant, as to re-discounting and the notice a purchaser is bound to take of an agent's authority. All these points have been decided adversely to appellant's contention in another case precisely like this, to which it was a party. 174 U. S. 125, 144–149, citing to the point that the directors might have empowered the cashier or president to indorse paper: 141 U. S. 132; 101 U. S. 181; 104 Mich. 521; 106 Mich. 367; 26 Wis. 663; S. C. 7 Am. Rep. 107; 40 Neb. 501; S. C. 24 L. R. A. 263. See also same case, 27 U. S. App. 603; 49 U. S. App. 67. Where the notary's certificate describes a note as bearing 8 per cent., instead of 10, the variance was not material. 4 Am. & Eng. Enc. Law (2 Ed.), 381. Service of the notice of protest upon the examiner in charge of the affairs of appellant bank was sufficient. 94 Tenn. 624; S. C. 28 L. R. A. 492; 57 Cal. 327; 4 Duer, 212; 3 Rand. Com. Pap. 278; 7 Mo. App. 318; 15 Me. 270; 14 La. 494; 15 La. 51; 11 Gratt. 260; 12 Ind. 225; 28 La. Ann. 48. Only foreign bills of exchange need to

be protested. 3 Rand. Com. Pap. §§ 1142, 1143; Sand. & H. Dig., § 4288; 9 Ark. 45; 8 Wheat. 326, Parsons, Bills & Notes, 643g; 6 How. 23; 8 How. 234; 4 Am. & Eng. Enc. Law, 379. We have no statutory requirements as to recitals of the certificate of protest, and it is not necessary that it recite the notice of dishonor. 3 Rand. Com. Pap. § 1666; Sand. & H. Dig., §§ 2884–5; 57 Cal. 327; 1 Kelley, 306; 11 Ind. 253. It was the duty of appellant to give notice of protest or have it done. Morse, Banks, 352. Failing to do so, it became liable for the amount. 5 Minn. 523; 47 N. Y. 570. Appellant should have notified appellee of dishonor of the note. 8 Metc. 79; 7 How. (Miss.) 656; 7 Sm. & M. 592. A notary's authority to give notice will be presumed from his possession of the paper. 20 Ala. 322; 28 Mo. 339; 18 Johns. 230; 15 Barb. 326; 26 Me. 45. Appellant's acts amounted to a waiver of demand and protest. Pars. Bills & Notes, 582; 12 Wend. 489; 13 Barb. 163; 4 E. D. Smith, 458; 1 Stark. 116; 7 Cal. 753; 11 Ind. 323; 2 Dan. Neg. Inst. 143; 32 Oh. St. 526; 15 Ark. 422. If appellant's contention that the notes were not genuine be true, the indorsers thereon would be liable without proof of demand or notice. 12 L. R. A. 434; 1 Pars. Bills & Notes, 444; 2 Vt. 193; 2 Dan. Neg. Inst. § 113; 1 *id.* § 669; 39 Ark. 47. All presumptions are in favor of the correctness of a notary's actions. 2 Dan. Neg. Inst. § 964; 1 Swan, 420; 43 Me. 144, 27 Grat. 674; 34 Ia. 466. Further, that protest was properly made and notice properly given, see: 2 Dan. Neg. Inst. §§ 965, 972, 998, 1000, 1002, 1005, 1016, 1017; 31 Ill. App. 78; 29 Mo. App. 518; S. C. 24 Mo. App. 420; 2 La. Ann. 964; Tied. Com. Pap. § 337; 3 Rand. Com. Pap. § 1243; 82 Ky. 231; 2 Law. Dic. 409; 6 How. (Miss.) 217; 3 Keyes, 343; 55 N. Y. 465; 13 So. 336; 40 Cent. L. J. 450; 39 S. W. 725; 11 Wheat. 173, 177.

BUNN, C. J. This is a suit by the appellee against the appellant, as the indorser on two promissory notes; the one drawn by the McCarthy & Joyce Company, payable to the appellant, at its office in Little Rock, on the 10th of February, 1893, dated July 19, 1892, for the sum of $5,000, with 8 per centum per annum interest from date until paid, and indorsed

James McCarthy and Geo. Mandlebaum, secretary and treasu-
rer. The First National Bank of Little Rock, the drawee, in
due course of trade assigned and transferred said note, for
value, by indorsement, to the appellee National Bank, of Man-
istee, Michigan, and the latter thereby became the owner thereof.
This note was presented for payment at the First National Bank
of Little Rock in due time after maturity, payment refused,
and the same was duly protested before suit.

This suit is also on a second note, made to the order of
George R. Brown, on October 10, 1892, for $4,000, with 10
per cent. interest from maturity until paid, due and payable at
the First National Bank of Little Rock, Arkansas, ninety days
after date, by the Press Printing Company, Geo. R. Brown,
president, the same falling due January 11, 1893. This second
note was duly indorsed by Geo. R. Brown, the payee, to the
First National Bank, waiving demand and protest, and by it
indorsed and transferred for value to appellee bank before ma-
turity. In due time it was sent by appellee to appellant bank
for collection, it being made payable at its office or place of
business. The appellant thus became the agent of the appellee
to collect the note, although it was liable thereon, as the im-
mediate indorser, to appellee. The First National Bank of Lit-
tle Rock, the appellant here and defendant in the court below,
thereby was made to occupy, or rather chose to occupy, two an-
tagonistic positions, the one as indorser and conditionally re-
sponsible for the payment of the note, and the other as the
agent of the appellee to collect the same, and, peradventure, from
itself. Appellant, after a delay of twelve or fifteen days, re-
turned the note to the appellee, with notification of its non-
payment.

Upon this state of case, the defendant asked the court to
give the following instruction, No. 11, to-wit: "If the plain-
tiff is excusable for not making demand and giving notice of
dishonor to the defendant bank at the maturity of the Press
Printing Company note, it was its duty to do so as soon as the
cause of the delay ceased to operate, and if it neglected to do
so, the defendant bank is discharged."

This instruction the court refused to give, but in its gen-

eral charge on its own motion gave the following on the sub-ject, to-wit: "6. The indorser of commercial paper is not, like the maker, absolutely bound to pay the paper upon which his name appears. The indorser's liability is conditioned to pay if the maker, on due presentment at maturity, fails to pay, and upon due notice of such default by the maker being given the indorser [as set forth in other instructions.] 7. So, in this case the defendant bank would be liable only on such presentment and notice, unless you may find, as to one of the notes (the Press Printing Company note), that at the time of maturity, and when payment should have been made, it was in the hands of the defendant bank, as the agent of plaintiff, for collection, and the defendant bank failed to make such presentment and demand, and returned it to the plain-tiff bank without having taken such steps. The defendant bank in such case would not be discharged of liability by rea-son of a failure to present for payment growing out of its own failure to discharge its duty to the plaintiff bank, and notice to it would be waived." In refusing to give the instruction asked by defendant and in giving the instruction quoted, the defend-ant argues that the court erred, and makes this error a ground for its motion for new trial.

The defendant contends that "it is not the usage to send a note to the obligor for collection from himself;" citing *Am. Exch. Nat. Bank* v. *Metropolitan Nat. Bank*, 71 Mo. App. 451, and *Drovers' National Bank* v. *Anglo-American Packing & Provis-ion Co.*, 117 Ill. 100. In the former it is held: "If a bank, receiv-ing paper for collection payable at a distant place, sends it by mail to the payer for collection, it is guilty of negligence, and this, too, though the payer is the only bank in the place, and though it is customary thus to send paper for collection, since the custom is un-reasonable, and though the bank payer failed within the time the forwarding bank had under the law to forward the paper, as the forwarding bank in fact forwarded it in a shorter time."

This particular question is not a question in the case at bar, as was the question in the Missouri case, between the prin-cipal and its collecting agent, for neglect of duty as such on the collector's part, but the question here is one between the owner

of the note and an immediate indorser.   The agency of the latter is only incidentally involved.   This indorser claims to be discharged because of the non-protest of the note, claiming that it was not responsible for the failure to make demand and protest.   It was not sued for failing to make demand and protest as against the other indorser, but sued as an indorser; and its only defense is that no demand and protest for the failure of itself to pay is shown.   The object of demand is payment; the object of protest is to notify all interested that payment has been refused.   It would seem to be a useless procedure to notify one who has made, or ought to have made, the demand, and been refused, that such was the fact.   It is true that it is said by many authorities, and that is doubtless the law, that it is negligence *per se* on the part of the holder of a note to send it to one of the obligors for collection; but it is only negligence in the holder in so far as he has appointed an improper agent to collect the note, for the delinquent agent ought not to be heard to plead his own failure to do his assumed duty as agent; and, besides, the question of negligence does not arise when the person who is such agent, and also an obligor, is sought to be bound in the latter capacity only.   It is not a question of negligence, but of notice, which is always necessary in order to bind an indorser, unless there has been a waiver, express or implied.   The instruction of the court put this question to the jury properly, and there was no error in that regard.

The case of *Drovers' Bank* v. *Anglo-American Packing & Provision Co.*, 117 Ill. 100, was where the P. & P. Company gave the bank a certified check of Kieldsen, on Rice & Messman, bankers of Cadellac, Mich., for collection.   The collecting bank failed to collect, and the Bank of Cadellac failed.   The suit was brought by the P. & P. Company against its agent, the Drovers' Bank, to hold it responsible for negligence in not making demand, etc., and their failing to collect before the payee bank failed.   The collecting bank was held liable, because it had sent the check directly to the bank primarily liable for collection, and not to a proper agent to see to the collection.   That was a suit for negligence in the agent.  · The suit at bar is against the Little Rock bank as one of the obligors on the

note. It pleads, not diligence, but want of notice of protest and non-payment for its defense.

The next question is whether or not the Little Rock bank is bound for the acts of its cashier, Denney, in negotiating these notes. The facts are that this bank received these two notes; whether by purchasing the same, or for its own accommodation, it is really impossible to say, nor does it matter, in our view of the case. The cashier, Denney, had had business conferences with the representatives of the appellee bank, which seemed to have money to loan, in the usual course of banking business, and the Little Rock bank required money, as its officials represented, to enable it to meet its demands in removing the cotton crop. Whether this was the real reason or not, it does not matter, so far as parties who did not known or have reason to know, the contrary are concerned.

The appellee bank paid the Little Rock bank the money on the two notes in question, and by direction of the latter deposited the amount with the New York bank to its credit. In due time, the appellee demanded the payment of the two notes, and payment was refused. It then sued the appellant bank as one of the indorsers on each of the two notes, and the real beneficiary of their sale to the appellee. And the defense is that Denney, the cashier, had no authority to bind his bank in such a dealing. On this point the court below gave its instruction No. 2, and also for plaintiff No. 4, in which we see no error.* See also recent case of *Auten* v. *United States National Bank*, 174 U. S. 125.

---

*Instruction No. 2, given by the court on its own motion was as follows: "(2) As to the authority of Cashier Denney to bind the defendant bank by indorsement of the note, I say to you that to the outside world and to parties dealing in good faith the cashier of a national bank is the duly-authorized agent of the bank to make such an indorsement for the bank, and the plaintiff bank had a right to deal with him as such; and the defendant bank would not be relieved of liability by reason of an improper or fraudulent indorsement made by. the cashier, Denney, unless the plaintiff bank had notice of such bad conduct or dishonest dealing of the cashier with his own bank."

Instruction No. 4 requested by plaintiff, and given by the court is as follows: "(4) It matters not what the reasons may have been,—the reasons or inducements actuating W. C Denney, cashier of the First National bank, defendant herein, in negotiating or discounting the notes in contro-

That the president or other official of the Little Rock bank should have successfully schemed to divert the Little Rock bank's funds to its credit in the New York bank to his own use by making use of his official authority cannot be introduced to defeat the claim of the Manistee Bank in this action. It had parted with its money in due course of trade, paid it out on the direction of the appellant bank; and certainly a misuse or misapplication of it afterwards by the fraud and chicanery of the officials of the appellant bank ought not to prejudice the appellee bank, if it is innocent; and there is nothing to show the contrary.

It is contended by the defendant that demand and notice upon Armstrong, the federal examiner in possession of the insolvent bank, was irregular, and not sufficient to bind the bank. Armstrong was not, it is true, an officer or agent of the corporation, but was by operation of law in charge of its books and other papers, to the exclusion of all others. There was, therefore, no other person upon whom to make the demand at the place appointed in the note. See 2 Randolph, Commercial Paper, § 1083, by analogy. Besides, the taking possession by the examiner was notice to all the world that no payment would be made, unless afterwards in the course of admininistration.

This disposes of the essential questions.

The judgment is affirmed.

---

versy. If you find from the evidence that said Denney was cashier of the First National bank, and was dealing with the public as its duly-authorized officer, and that plaintiff had no knowledge that W. C. Denney, cashier, was engaged in defrauding the First National bank, and that it, in good faith, dealt with him as an authorized officer of that bank, then the court instructs you that Denney's acts were such as are within the scope of his authority as such cashier, and the defendant bank would be bound by his acts.''