**WASHINGTON LOAN & BANKING CO. v. FOURTH NAT. BANK OF MACON et al.**

No. 5762.

Circuit Court of Appeals, Fifth Circuit.
March 7, 1930.

W. A. Slaton, of Washington, Ga., for appellant.

Scott Russell and C. Baxter Jones, both of Macon, Ga. (Jones, Jones, Johnston & Russell, Geo. S. Jones, and Scott Russell, all of Macon, Ga., on the brief), for appellees.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

SIBLEY, District Judge.

The bill of Washington Loan & Banking Company of Washington, Ga., against the receiver of Fourth National Bank of Macon, Ga., sought to impress a trust on the funds of the latter bank upon the ground that at the time of the failure, November 26, 1928, there were identifiable funds in the hands of the Macon bank, which equitably belonged to the Washington bank, and which passed into the hands of the receiver. The bill was dismissed as without equity upon its face. The facts alleged, generally stated, are these: For a long time before the failure of the Macon bank, the Washington bank had sent to it checks and drafts indorsed in blank, and inclosed in a form letter as follows: "Enclosed find for collection and credit items enumerated below. * * * Return promptly if unpaid." The form of the Macon bank's acknowledgment is not stated. The items so sent were at once entered by the Macon bank to the credit of the Washington bank, no separate collection register apparently being kept; but the Washington bank did not check against them until sufficient time had elapsed for the drafts to be collected and the funds or the uncollected drafts to be actually returned to the Macon bank by its correspondents. Uncollected items were, when returned, charged to the Washington bank without previous notice to or consent by it. Just prior to the failure, a number of drafts on points in Massachusetts, Pennsylvania, and New Jersey were thus sent by the Washington bank to the Macon bank. Those on Pennsylvania and New Jersey were by the Macon bank sent to the First National Bank of Philadelphia, where the Macon bank had a general deposit account. What special instructions were given the Philadelphia bank do not appear, but the proceeds of these drafts so far as collected were all put to the general credit of the Macon bank on or before November 24, 1928, two days before the failure, but were not checked out by the Macon bank. The drafts on Massachusetts were sent by the Macon bank to the Federal Reserve Bank of Atlanta, no special instructions appearing, and by it forwarded to the Federal Reserve Bank of Boston for collection for the account of the Macon bank. The Macon bank had no account with the Federal Reserve Bank of Boston, so that collections made by it were customarily remitted to the Federal Reserve Bank of Atlanta and credited there to the general account of the Macon bank. Some drafts were collected in Boston the very day of the failure of the Macon bank, and their total of $856.48 was on that date in the hands of the Federal Reserve Bank of Boston, not yet remitted to Atlanta. The Macon bank, after its failure, had large balances both at the First National Bank of Philadelphia and the Federal Reserve Bank of Atlanta, and its receiver received also the funds in the hands of the Federal Reserve Bank of Boston. All drafts remaining uncollected have been returned to the Washington Bank as its property by the receiver. The controlling question is whether any of

the collected funds which came to his hands were then the legal or equitable property of the Washington bank, and can be traced as such.

■■ There is really no problem of tracing. Identifying coin or currency is impossible, for no coin or currency was probably ever handled in the transactions. Tracing credits under modern doctrine is sufficient. Richardson v. New Orleans Coffee Co. (C. C. A.) 102 F. 780, 52 L. R. A. 67. The Macon bank's general accounts with the Atlanta and Philadelphia banks were equivalent to separate vaults or drawers in which some of its funds were kept, and if funds of the Washington bank are shown to have gone into one of them and no withdrawal has since been made which must have taken these funds out, equity concludes that the fund which the Macon bank did not withdraw was that which it ought not to have used. If therefore any of the collections at the time of the failure still rightly belonged to the Washington bank, it is plain that the receiver got them, and must account for them. Monticello Hardware Co. v. Weston (C. C. A.) 28 F.(2d) 673.

■ The relationship of a bank to a draft or check turned over to it by a customer depends on their contract respecting it. This contract may appear in the form of the indorsement, or otherwise. If in the form of indorsement, notice is carried to all persons dealing with the paper. Otherwise not. Evansville Bank v. German-American Bank, 155 U. S. 556, 15 S. Ct. 221, 39 L. Ed. 259. Statutes and local and general banking customs may influence or control the contract. No statute is referred to as important here unless Georgia Code of 1910, § 2362, is such. It converts into statute the decision in Bailie v. Augusta Savings Bank, 95 Ga. 277, 21 S. E. 717, 51 Am. St. Rep. 74, and, in the absence of a contrary expressed or implied contract, makes of force in Georgia the New York rule that a collecting bank is liable to the customer for defaults of its correspondents. Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261.

■ No question of default by a correspondent of the Macon bank is here in question, and the statute is immaterial. No custom, general or local, is set up. This case, therefore, rests on the contract interpreted by the conduct of the Macon and Washington banks. We think it plain that notwithstanding the blank indorsement of the draft (which is of no great consequence where the original parties only are involved, Richardson v. New

Orleans Coffee Co. [C. C. A.] 102 F. 788), and the immediate entry of a credit to the Washington bank (even the right to check against the credit would not be conclusive, Bailie v. Augusta Savings Bank, 95 Ga. 277, 21 S. E. 717, 51 Am. St. Rep. 74), that it was not their understanding that the Macon bank had at once bought the drafts and credited the proceeds on general deposit. The letter of transmittal expressly stated that each draft was indorsed for collection first, and for credit after its collection, or prompt return if unpaid. Until collection the ownership of the draft remained in the Washington bank, the Macon bank and its correspondents being only agents for the collection, and after collection the proceeds remained the property of the Washington bank until finally passed to the latter's checking account by the Macon bank. See Freeman v. Exchange Bank, 87 Ga. 45, 13 S. E. 160. The immediate posting of the amount of the draft to the general deposit account of the Washington bank obscures but does not defeat the truth. It is as though the entry of the credit had read expressly as of a draft instead of as of cash. The former form of credit imports a collection only. Bailie v. Augusta Savings Bank, 95 Ga. 277, 21 S. E. 717, 51 Am. St. Rep. 74. The facts alleged authorize the conclusion that the agency was to cease and the relationship of general depositor, that is, general creditor, to begin only when the collection having been made, the proceeds became available to the Macon bank, and it in turn made them available to the Washington bank. Had the banking customs involved remittances of collected funds by correspondents, or even notice of their collection, no doubt would exist of the precise time that each draft became so available, but no such custom appears except between the Federal Reserve Bank of Boston and Federal Reserve Bank of Atlanta. A collection made by the former did not become available to the Macon bank until remittance or notice to the Federal Reserve Bank of Atlanta under the bill's allegations, and by fair inference was not to be considered an effected collection subject to check at the Macon bank until that time. On the other hand, the collections which went to the general credit of the Macon bank at Philadelphia were thereafter subject to its check, and the Macon bank, if it did not choose to be certainly informed by notice, was bound, after a reasonable time for notice of the draft's collection or its return in default of collection, to assume that collection had been made and permit checking by the Washington bank.

■■ It follows that collections in Boston unremitted and unnoticed to the Federal Reserve Bank of Atlanta on November 26, 1928, were uncompleted collections, and were still the property of the Washington bank. Of those made through the Philadelphia bank the collections made in New Jersey on November 21 and November 23 may be recoverable, remembering that November 25 was Sunday. The evidence will more certainly show whether these collections reached Philadelphia in time to be available in-Macon on November 26. The previous collections were all completed in sufficient time for notice to have been given the Macon bank before its failure, and became general deposits of the Washington bank, unless by an earlier knowledge of the Macon bank's insolvency on the part of its officers they were precluded from honestly accepting them as such. Commercial Nat. Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363; People's National Bank v. Moore (C. C. A.) 25 F.(2d) 599.

Reversed and remanded for further proceedings not inconsistent with this opinion.