## Case No₁ 4,690.

### FARWELL et al. v. CURTIS.

[7 Biss. 160; 22 Int. Rev. Rec. 161; 2 N. Y. Wkly. Dig. 499; 8 Chi. Leg. News, 267; 3 Cent. Law J. 352.][1]

Circuit Court, W D. Wisconsin. April, 1876.

Vilas & Bryant, for defendant.

HOPKINS, District Judge. The real point of the defense is, whether a check given by defendant on the 5th of April, 1875, for $800, was and is to be held as a payment. The parties have stipulated the facts to be as follows: That on the 5th day of April, 1875, the defendant, a resident of New Lisbon, in this state, purchased goods of plaintiffs in Chicago, their place of business, to the amount of $800 and over, and on that day gave his check to the plaintiffs for the sum of $800, upon the Bank of New Lisbon, a banking house doing business in that place, to apply as payment towards the goods so purchased by him to that amount; that the plaintiffs on the same day sent the check per mail to the bank, the drawees, with instructions to collect and return; that there is a daily mail between Chicago and New Lisbon; and the check was received at the Bank of New Lisbon on the morning of the 7th of April, and was paid out of the defendant's funds on deposit in the bank, there being sufficient for that purpose, and charged to his account; that the bank on the 7th of

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 2 N. Y. Wkly. Dig. 499, contains only a partial report.]

April, sent to the plaintiffs, through the mail, a draft for the amount of the check on the Union National Bank, Chicago, which was received by them on the morning of the 9th, which they on that day deposited in the Bank of Montreal, of Chicago, for collection, which was on the 10th of April presented to the Union National Bank for payment, and not paid, and was returned on the same day to the plaintiffs, who, on the same day, wrote the New Lisbon Bank that the check would go to protest if not paid on Monday, and to defendant that it was not paid, and asking him "to poke up the bank on the matter." Not being paid, it was protested on Monday, the 12th, of which defendant was notified per mail.

It is further stipulated that the Bank of New Lisbon could have paid said check in money up to the 10th day of April; but that on the close of the day's business on that day it stopped payment, having up to that time paid all checks presented for payment; that the bank had not the funds in the Union National Bank to meet the draft when they drew it, nor authority to draw it without funds.

These are the material facts established by the evidence, and the question is, whether the plaintiffs were guilty of such negligence in presenting the check and demanding payment, as to discharge the drawer.

The practice of sending checks by mail to the drawee I think is not usual, and has not received much judicial consideration, and not any direct sanction that I can find. In Morse, Banks, p. 334, he says it is a good presentment, and cites for his authority, Bailey v. Bodenham, 10 Law T. (N. S.) 422. I have examined that case, and it gives some countenance to his assertion, but I think the point is not absolutely decided.

In these days when such facilities are furnished by express companies for presentation at distant places, there is no reason for adopting a less direct or effective mode to accomplish the object. In this case there is a daily mail, by railroad between Chicago and New Lisbon, and a daily express also, with route agents and local agents, which furnished ample opportunities for presentation at the bank counters, as early as the morning of the 7th of April, and probably on the morning of the 6th, if it had been sent by the first opportunity. But if sent by the last train on the 6th, it would have reached New Lisbon on the morning of the 7th, and could have been collected and returned so as to have reached the plaintiff by the morning of the 8th of April. To send by mail to the drawees with instructions to collect and return, under such circumstances, is hardly equivalent to a demand at the counter for payment. The bank could not have paid the currency if it had it, there was no one to pay it to. The admission is that the bank was paying and had the money to pay up to and including the 10th, so that if the money

had been asked on the 7th, it would have been paid. Now, as the plaintiff adopted another course than the one which the exercise of ordinary care and diligence would have dictated, and loss has resulted by reason of it, they should stand it. But it may not be necessary to settle this point, as Morse, who says a presentation by mail is good, as well as the case cited by him to support the assertion, says, also, that when the holder sends by mail to the drawee directly, if the money does not come back by the return mail, notice of dishonor should be given. Adopting this rule would not relieve these plaintiffs, for they did not comply with it, the money did not come back by the next mail, nor was the check protested as required. But instead of the money, on the 9th, four days after the receipt of the check, a draft came back on the Union National Bank, but that was not presented until the 10th for payment, and was not protested until the 12th, so that conceding that the presentation by mail was sufficient, the plaintiff was guilty of laches in not presenting the draft before the 10th. This delay is inexcusable according to any rule of diligence that I know of, so that assuming that Mr. Morse states a safe and satisfactory rule, it does not exonerate these plaintiffs from laches. But I think if the time is extended beyond what it would have been if sent by the usual and ordinary modes, that is, by express, or to some party to present, and beyond the period established by law as reasonable for presentation, and a loss happens by reason of the failure of the drawee, the payee of the check is alone chargeable unto it.

For instance, in this case, it is admitted that the bank had the money to pay the check up to and including the 10th, so that if payment had been demanded in the usual way, it would have been paid, and if the parties chose to make the drawee their agent, and the drawee as their agent sent a worthless draft instead of the money, which he would have paid to any party presenting the check at the counter, and charged the check to the drawer, the same as if paid in money, so that he had no right to enforce his claim or power to protect himself; the payee instead of the drawer, should incur the loss that ensued by the subsequent failure. The charge to defendant's account was made on the 7th of April, in the morning, and the check marked paid, and what was done after that time was done by the bank at plaintiff's request, and as their agent, and whether in good or bad faith on the part of the banker, the defendant is not to blame or chargeable therewith, or for any loss resulting therefrom.

The common or commercial law has fixed certain times within which checks must be presented to the drawees for payment, and when it appears that the bank was paying during that time, and the drawer's account was good for the same, and the refusal or failure to obtain payment after, was by reason of the failure of the bank occurring subsequent thereto, the loss has to be borne by the payee or holder of the check. That rule is, in cases where the parties all reside in the same place, that it must be presented for payment before the close of business on the day following its date or delivery to the payee; and in cases where it is drawn upon a bank at another place, it must be sent at the fartherest, by the last mail on the next day after it is received, and be presented by the party receiving it on the day following the reception by him. Smith v. Janes, 20 Wend. 192; Story, Prom. Notes, 493.

If not thus regularly demanded, and the bank or bankers should fail after those times, the loss will be the loss of the holder, who is considered as having made the check his own by his laches. If the check is presented and not paid, notice of dishonor must be given the drawer, in order to charge him. Now, in this case, it is plain that the plaintiffs did not observe these rules. They sent the check in time, and if the presentation by letter was a good demand, it was presented on the 7th in the morning; then it should have been paid on the 7th, and if not, the drawer should have been notified of its non-payment. But instead of being paid in money it was paid by draft on Chicago, and it is claimed that the plaintiffs had time to present that, to see whether it would be paid, and that if not paid, they could then protest the check. This is not the law. The holder of a check cannot in that way extend the time for which the drawer would be liable. The drawer had a right to have his check paid on the day presented, and it was the duty of the holder to see to it that it was so paid, or if not, protested, and if the holder accepts the check or draft of the bank in payment in lieu of money, he must present and collect it the same day, or else he is chargeable with laches. He cannot, as in this case, keep it for three days and then go back upon the drawer of the check if it is not paid, as by so doing he would extend the drawer's liability for two days beyond the time fixed by the law. Alexander v. Burchfield, 7 Man. & G. 1061.

This point is directly decided in Smith v. Miller, 43 N. Y. 171. In that case the check of the drawee was taken and presented at the bank on the following day—but before its presentation the drawers of the check had failed. The party accepting the payment thereupon protested the draft which they received it in payment of, and brought suit to recover the amount of the draft, claiming that as the check was presented on the next day after its date, it was duly presented, and if not paid, the draft for which it was given was not paid.

On the contrary it was claimed that as the drawers of the check were paying all of the day on which it was given, and that

if, it had been presented on that day it would have been paid, and that as it was taken in lieu of the money, it should have been presented on that day, that the party could not have the whole of the next day to present a check taken under such circumstances, which was sustained by the court, which said:

"It was the duty of the plaintiffs to present the check at the bank, at least during the day on which they received it, and obtain either the money or a certificate, or cause the same to be protested for non-payment, and not having done so, they were chargeable with negligence and the consequent loss."

Here, even giving the plaintiffs the benefit of the time allowed when sent by mail, as in other cases, and they are guilty of negligence, they received the banker's check on the 9th, but delayed presenting it for payment to the Union National Bank until the 10th. Certainly such negligence cannot be tolerated in treating with paper that they had taken in lieu of money, without the consent or knowledge of defendant. The plaintiffs cannot hold the defendant liable on his check during the time they were thus experimenting with the check they received from the bankers, in payment of his check to them.

The bankers may have, and probably did, practice a fraud upon the plaintiffs when they sent this draft on the Union National Bank. But the defendant is not chargeable with that. He can say to the plaintiffs: "If you had sent the check to a party here to present in the usual way it would have been paid, and I have a right to require you to pursue the ordinary course in such case, and if you depart therefrom, and are defrauded by your agent, which in this case was the banker, it is your loss, and you alone are liable, as you brought it unnecessarily upon yourself."

Under the evidence, the defendant must therefore have judgment.