FIRST NAT. BANK OF EVANSVILLE v. FOURTH NAT. BANK OF LOUISVILLE.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1893.)

No. 21.

1. BANKS AND BANKING—COLLECTIONS—MAILING PAPER DIRECT TO DEBTOR.

A bank receiving a certificate of deposit for collection, and mailing it to the bank which first issued it, with a request for a remittance, is guilty of negligence.

2. SAME—PRINCIPAL AND AGENT—NEGLECT OF OFFICER—MAIL CLERK.

A bank is charged with notice of letters duly mailed to it and received by the general bookkeeper, whose duty it is to open and distribute mail matter, although he conceals such letters to hide certain irregularities in his office, and thereby prevents their coming into the hands of the other bank officers.

3. SAME—COLLECTIONS—NEGLIGENCE—PROXIMATE CAUSE OF LOSS.

The E. bank, on May 8, 1888, mailed to the L. bank for collection a certificate of deposit issued by P. & Co. On May 9th the L. bank received the certificate, and negligently mailed it directly to P. & Co., with a request to remit. On June 1st the L. bank credited the E. bank with the item in the account current for May, and wrote that nothing had been heard from P. & Co after repeated inquiries, and requested that the matter be investigated, and a duplicate or a remittance obtained from P. & Co. On June 22d, having received no answer to this letter, the L. bank wrote the E. bank that repeated letters about the item had remained unanswered, that the L. bank had written the E. bank for a duplicate, and that the L. bank now charged the E. bank with the item, which was accordingly done in the account current for June. No further correspondence was had on the subject, and thereafter the item was omitted from the monthly accounts current. P. & Co. continued in good credit until after January 1, 1889, when they failed. *Held,* that the L. bank was not responsible to the E. bank for more than nominal damages.

In Error to the Circuit Court of the United States for the District of Kentucky.

At Law. Action by the First National Bank of Evansville, Ind., against the Fourth National Bank of Louisville, Ky., for negligence in failing to make a certain collection for plaintiff. Verdict and judgment for nominal damages were given for plaintiff, who now brings error. Affirmed.

Statement by SAGE, District Judge:

On the 8th of May, 1888, the plaintiff in error sent by mail to the defendant in error, for collection, a certificate of deposit, of which the following is a copy:

"Banking House of M. M. Pool & Co., Shawneetown, Ill., February 8, 1888.

"Dr. Wm. N. Warford has deposited in this bank twenty-six hundred and sixty-six and 66-100 dollars for three months, payable to the order of himself on return of this certificate, properly indorsed. Interest at five per cent. per annum from date until maturity.

"No. 1158. M. M. Pool & Co."

The certificate was received by the Louisville bank on May 9, 1888, credited by it to the Evansville bank as $2,700, and so entered on the account current mailed to that bank June 1, 1888.

M. M. Pool & Co., who issued the certificate, were then bankers in good credit at Shawneetown, Ill., near to plaintiff and remote from defendant.

They continued in good credit and active business until some time after January 1, 1889, when they failed.

Warford, who assigned and indorsed the certificate to the plaintiff, was a man of wealth. By the law of Illinois he was liable as indorser only upon condition that the holder of the certificate should bring suit against Pool & Co. at the then next term of the circuit court of Gallatin county, Ill., (in which county Shawneetown is located,) being the term of September, 1888, and prosecute them to insolvency.

It does not appear from the record that the certificate was indorsed to the defendant, but it is averred in the complaint, and not denied in the answer, that Warford, before the maturity of the certificate, indorsed it to the plaintiff; and in a letter written by the counsel for the Louisville bank to the Evansville bank on the 14th of August, 1889, and put in evidence by the plaintiff, the certificate is referred to as indorsed by Warford to the plaintiff. The record does not show that any instruction or authority was given defendant to bring suit upon the certificate.

The defendant, on the day on which it received the certificate, sent it by mail to Pool & Co., requesting them to remit. On the 1st of June, 1888, having heard nothing from Pool & Co., although it made repeated inquiries after the certificate, defendant wrote to plaintiff as follows:

"Dear Sir: On May 9th we received from you a certificate of deposit for $2,700, issued by M. M. Pool & Co., bankers, Shawneetown, Illinois. We sent the item for collection and returns, but so far have heard nothing from them, notwithstanding we have sent several inquiries after it. Will you kindly see the indorser, and have him investigate it, and either obtain us a duplicate of it or have them remit to us for it?"

Not receiving any answer to that letter, the defendant, on June 22, 1888, mailed another letter to plaintiff, of which the following is a copy:

"We charge your account $2,700 for item on Shawneetown, Illinois, in yours of May 8th. We have written repeatedly for the item, but can get no returns. We also wrote you for a duplicate several weeks ago, but have not received one as yet. We hope you can settle this matter without further trouble."

On Monday, July 2, 1888, plaintiff having made no objection to the course suggested in the letter of June 22d, the defendant mailed to plaintiff its account current for June, in which the Shawneetown item of $2,700 was charged back as stated in the letter of June 22d.

Monthly accounts current were duly sent for every month thereafter up to and including the account mailed April 1, 1889, for March, 1889. Each of these accounts omitted the Shawneetown item. No objection to the omission, nor to what had been done by defendant, was made until April 24, 1889, but in the meantime Warford had been released,—in September, 1888,—and Pool & Co. had failed in January, 1889. With reference to the receipt of the letters of June 1 and June 22, 1888, and of the account current of July 1, 1888, it appears from the evidence that the mail was brought to plaintiff's bank by a letter carrier, and there came into the hands of Mr. Schor, general book-keeper of the bank, whose duty it was to open and distribute mail matter received. He had been guilty of certain irregularities, not, it is said, "involving any moral turpitude;" that is to say, he took no money belonging to the bank, but, falling behind in his work, concealed letters and communications, including the above, and they did not come to the actual knowledge of the officers of the bank until after April, 1889, when the letter of June 1, and the account current mailed July 2, 1888, were found among Schor's papers, he having suicided upon the discovery of his irregularities. The letter of June 22d was not found. The trial judge properly charged the jury that if the letters and accounts were received by Schor they were, in law, received by the bank; and the jury found that they were so received. The plaintiff's action is based solely upon the alleged neglect and failure of the defendant to discharge its duties touching the collection of said certificate of deposit. The verdict and judgment of the court below were for nominal damages for the plaintiff, and the case is before this court upon the plaintiff's exceptions.

Humphrey & Davie and Garvin & Cunningham, for plaintiff in error.

Walter Evans, (Barnett, Miller & Barnett, of counsel,) for defendant in error.

Before JACKSON and TAFT, Circuit Judges, and SAGE, District Judge.

SAGE, District Judge, (after stating the facts as above.) The assignments of error set forth in the record are embodied in the propositions relied upon by counsel for appellees in their brief.

Their first proposition is that the transmission by the defendant in error of the certificate of deposit to M. M. Pool & Co., the makers, for collection, was negligence, which made the defendant in error responsible for any loss resulting. They cite Bank v. Burns, 12 Colo. 539, 21 Pac. Rep. 714; Drovers' Nat. Bank v. Anglo-American Packing & Prov. Co., 117 Ill. 100, 7 N. E. Rep. 601; Bank v. Goodman, 109 Pa. St. 424, 2 Atl. Rep. 687. The court below took this view of the law, and approved the cases above cited in overruling a general demurrer to the answer. See, also, Farwell v. Curtis, 7 Biss. 162; Indig v. Bank, 80 N. Y. 100; and Briggs v. Bank, 89 N. Y. 182. The jury were charged that the defendant violated its duty as an agent by sending the certificate to the makers of it for collection, and that it was liable for the damage resulting from that violation of duty. So far, therefore, the plaintiff in error has no ground for complaint. The court went on to state to the jury that the real question in the case was whether the damage claimed was the result of the negligence complained of. Calling attention to the letters of June 1 and June 22, 1888, and to the charging back of the amount of the certificate in the July account, the court referred to the fact that there was no conflict of evidence, and instructed the jury that those letters and the charging back amounted to a renunciation of the defendant's agency, so far as the defendant could renounce it. But the court added that the defendant could not, by its renunciation, put an end to the agency, as the facts then were, and relieve itself from liability, without the consent, express or implied, of the plaintiff, and that such consent would be implied from the silence of the plaintiff after being informed of the renunciation. The court added that, if the plaintiff made no objection to the renunciation, the defendant was not liable for damage thereafter, resulting from events subsequent, and not from the sending of the certificate to Pool & Co. for collection. Counsel for plaintiff in error undertake to escape this conclusion by citing Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. Rep. 657, in support of their contention that the receipt of the letters and statements of account by Schor was not a receipt by the plaintiff, nor was his knowledge of their contents to be imputed to the plaintiff. The citation is not a fortunate one for them. In that case the clerk of Cooper, a depositor with the bank, had raised various checks, the signatures to which were genuine. Those checks were paid, and charged to Cooper's account. Cooper sent in his pass book from time to time between the 1st of

October, 1880, and the 20th of January, 1881, and it was written up and returned to him with the paid checks, including those that had been raised. The balances were struck as determined by the genuine and the raised checks. It appeared from the evidence that Cooper was in the habit of examining his check book from time to time, but in a casual way, and he did not discover the forgeries until March 1 or 2, 1881. The supreme court held that he was bound personally, or by an authorized agent, and with due diligence, to examine the pass book and vouchers, and to report to the bank without unreasonable delay any errors that might have been discovered in them, and that, if he failed to do so, and the bank was thereby misled to its prejudice, he could not afterwards dispute the correctness of the balance shown by the pass book. Justice Harlan, in announcing the opinion of the court, said that the sending of the pass book to be written up and returned with the vouchers was, in effect, a demand to know what the bank claimed to be the state of his account, and the return of the book with the vouchers was the answer to that demand, and that it imported a request by the bank that he would, in proper time, examine the account so rendered, and either sanction or repudiate it. He also said that Cooper's failure to make the examination or to have it made within a reasonable time was inconsistent with the object for which he obtained and used a pass book. Citing Perkins v. Hart, 11 Wheat. 237, 256, and Wiggins v. Burkham, 10 Wall. 129, 132, he added that, where a party to a stated account neglects to examine it or to have it examined within a reasonable time after receiving it, by reason of which negligence the other party, relying upon the account as having been acquiesced in or approved, has failed to take steps for his protection which he could and would have taken had such notice been given, he is estopped from questioning its conclusiveness. To apply that case to this: The defendant, in its letter of June 1st, notified the defendant that it had sent the certificate to Pool & Co., the makers, for collection, and that it had no returns, and could get no answer to its inquiries. It then asked the plaintiff to see the indorser, and have him investigate, and either obtain a duplicate of the certificate, or, have Pool & Co. remit. There was no answer to this letter. The defendant waited until June 22d. Still no answer. The defendant mailed to plaintiff its letter of that date, notifying that it charged back to plaintiff's account the $2,700 credit for the certificate; that defendant had written repeatedly for the item, but could get no returns, and had written plaintiff several weeks before for duplicate, but had not received it; closing with the expression of the hope that plaintiff could settle the matter without further trouble. No answer to that letter. Then, on July 2d, the account current for June, showing on its face the charging back of the $2,700 item, was mailed by defendant to plaintiff, and thereafter, regularly, monthly accounts for nine months, each with that item omitted. All this time no word from plaintiff. Finally, on April 24, 1889, came the plaintiff's objection to the account. Meantime the maker of the certificate had become insolvent, and the

indorser had been released by operation of law. Here was no merely implied or imported request that the plaintiff should examine the account sent. Attention was directed specifically to the item charging back the credit for the certificate. Had the plaintiff complied with defendant's request contained in the letter of June 1, 1888, by furnishing a copy of the certificate, the collection could have been made, if not from the maker, at least from the indorser. Had the plaintiff then declined the request, and notified the defendant that it would be held to the performance of its agency, and to the full measure of responsibility for any loss resulting from its default, it could have enforced the collection without regaining possession of the certificate, which was only a piece of evidence, and protected itself against loss. As it was, when plaintiff's objection was made the conditions were so changed that collection could not be made, and the loss must fall upon the plaintiff or the defendant. The conclusion is irresistible that the plaintiff, by its silence, acquiesced in the defendant's renunciation of its agency, and caused the defendant to fail to take such steps as it might otherwise have taken for its protection. The facts of this case are quite as strong to support an estoppel as those shown in Bank v. Morgan. However, counsel for plaintiff did not cite that case for the application above made, but to call attention to the fact that the supreme court decided—First, that if the bank had been guilty of negligence it would have been liable notwithstanding the depositor's failure to examine the pass book and vouchers; and, second, that as the depositor's clerk had no power to bind him by raising the checks, he had no power to charge him with the imputed knowledge of the fact that they had been raised. The court did hold that if the officers of the bank could, by proper care and skill, have detected the forgeries before paying the raised checks, the bank would be the loser, even if the depositor made no examination of his account. Certainly, because in that state of fact the negligence of the bank's officers would have been the proximate cause of the loss. But how does that lay the foundation for maintaining that the court below erred in this case? The jury were instructed that the plaintiff had the right to decline the defendant's renunciation of its agency, and to hold the defendant responsible, but that, if they found that the bank received the letter, and remained silent, acquiescence in the renunciation was to be inferred, and the defendant would not be responsible for any damage resulting from subsequent events, and not directly caused by the original negligence of sending the certificate to the makers for collection. Thus we see that the court expressly charged the jury that the defendant was not in any event to be released from responsibility for any loss resulting from its negligence, but only from the consequences of its failure to act after the plaintiff's acceptance —if found from the evidence—of the renunciation of the agency. These instructions are in perfect harmony with the decision in Bank v. Morgan. As to the second point for which counsel cited that case, it has no application here. There the raising of the checks was not only entirely out of the line of the clerk's authority, but it was a

fraud and a crime against his employer, and therefore his knowledge was not imputed to his employer. Here it was the business of Schor, the plaintiff's bookkeeper, to receive and open and distribute letters addressed to the bank and coming by mail. Hence the court below rightly charged the jury that if they found that the letters mailed by the defendant were delivered to him, they should find that they were delivered to the bank. Now, it is claimed that because he secreted those letters, and kept them from the actual knowledge of the bank, the bank is not chargeable with notice of their receipt or of their contents, because he had no right to secrete them, and to keep them. As well might it be claimed that the bank could repudiate a payment made to its collecting agent by its debtor, because he had embezzled it, instead of paying it over. Schor's authority was to receive the letters for the bank, and the collector's agency, in the case put, was to receive money for the bank. Delivery in the one case was delivery to the bank, and payment in the other case was payment to the bank, and what Schor or the collector afterwards did concerned only themselves and the bank, so far as the rights and interests of the parties were involved.

It is assigned as error that the court below instructed the jury that it was not the duty of the defendant to sue the indorser of the certificate. Upon this point the jury were further instructed that, while the defendant had no such authority, it was under the duty, or would have been, if the renunciation of its agency had not been accepted by the acquiescence of the plaintiff, to push the matter, and, if it could not make the collection without suit, to promptly inform the plaintiff, so that it might sue for itself, if it thought proper to do so. It was held in Crow v. Bank, 12 La. Ann. 692, that it is not within the scope of the collecting bank's agency to bring suit upon paper left with it for collection. This view is supported by the text of Morse on Banking, (section 246,) where it is said, upon the authority of Wetherill v. Bank, 1 Miles, 399, that the collecting bank "might be seriously prejudiced by the institution of such proceedings; for the fact might, under some circumstances, be evidence going to show that the bank had itself adopted the paper, and therefore, whether it were paid or not, owed the amount of it to the original holder." It was said in Sterling v. Trading Co., 11 Serg. & R. 179, that a note given in charge to a bank for collection, and so indorsed as to place the apparent and technical title in the bank, if not withdrawn after nonpayment and protest, might be sued upon by the bank in its own name. In Ryan v. Bank, 9 Daly, 308, it was held that it is no part of the general business of a bank to bring suit upon a draft deposited with it for collection. The authorities are decidedly in favor of the law as given in charge to the jury by the court. It may be, however, that under special circumstances, as where delay to bring suit—the collecting bank being the indorsee—would operate to discharge a surety, and there was not time to wait for advices from the owner of the paper, or where an immediate attachment was necessary to prevent the fraudulent removal or disposition of his property by the debtor to avoid

payment, it would be the duty of the collecting bank to bring suit. But there was no such contingency here. The loss resulted, not because no suit was brought, but because the defendant was induced to believe, by the plaintiff's failure to respond to the letters and statements of account mailed by defendant from time to time, and had the right to believe, that the plaintiff had accepted the renunciation of the agency, and had undertaken the collection on its own account. It is therefore immaterial whether the instruction complained of was right or wrong.

It is also assigned as error that the court below erred in charging the jury that the defendant's letter of the 22d of June, and the letter of July 2d, inclosing the account current for June, with the charging back to the plaintiff of the $2,700 credit on account of the certificate, amounted to a renunciation of the agency, and that, if the plaintiff did not object within a reasonable time, it must be held to have accepted the renunciation; the court adding that, in its opinion, there was no evidence that the plaintiff ever did anything, and, if that was so, the defendant was not liable for any loss that resulted from its subsequent inaction. So far from there being error in this instruction, we think that upon the evidence the court would have been justified in directing the jury to find that the agency was renounced by the defendant, that the renunciation was acquiesced in by the plaintiff, and that the plaintiff was entitled to recover only nominal damages. It was in evidence that the letters were properly mailed, and the presumption is that they reached their destination, and were received by the plaintiff. Rosenthal v. Walker, 111 U. S. 193, 4 Sup. Ct. Rep. 382. As the court said in its charge to the jury, there was no contrariety of evidence, no dispute as to the facts, and there is no doubt that the conclusions of law were correctly stated by the court.

The judgment of the court below is affirmed, with costs.