Argued 16 January; decided 20 March, 1899.

KERSHAW *v.* LADD.

[44 L. R. A. 236; 56 Pac. 402.]

BANKS—CONSIDERATION FOR SERVICES.—An agreement by a bank to collect a check and issue a certificate of deposit for the proceeds, is based on a sufficient consideration to make it liable for negligence in attempting the collection.

NEGLIGENCE IN COLLECTION.—It is not negligence for a bank which has received for collection an ordinary unindorsed check to send it to the drawee with a request for payment, where such is the custom among banks.

BANKS—REASONABLENESS OF CUSTOM.—A custom of banks to send checks direct
   to the drawee banks for collection and return is not unreasonable, at least as
   applied to the collection of a plain unindorsed check.

USAGE—PRESUMPTION—BURDEN OF PROOF.—Usages are presumed to be reason-
   able, and the person attacking them has the burden of showing their unrea-
   sonableness.

NEGLIGENCE IN COLLECTION.—Where a collecting bank accepted in payment of
   the collection a check or draft which was dishonored on presentation, it is
   not liable to the sender of the claim where the latter was not thereby injured.

From Multnomah :   E. D. SHATTUCK, Judge.

This is an action by Andrew Kershaw to recover dam-
ages for alleged negligence on the part of Ladd & Tilton
in the attempted collection of a check drawn by plaintiff
in their favor upon the United States Banking Co.   The
defendants are bankers, located at Portland, and the
United States Banking Co. at Sheridan, fifty miles dis-
tant.   The plaintiff resided at Grand Ronde, some fifteen
miles from Sheridan, and, on January 16, 1894, for-
warded from there the check in question to the defend-
ants at Portland, with instructions to collect, and remit
a certificate of deposit for one year, bearing interest.
The check was received by defendants January 18, and
forwarded to the United States Banking Co. the same
day for collection and return.   The banking company
received it the next day, and on the twenty-third drew a
draft for the amount thereof upon the Merchants' Na-
tional Bank, its correspondent at Portland, and on the
twenty-fourth sent the same through the mail to defend-
ants, who received it the same day, and presented it for
payment, which was refused.   They immediately noti-
fied plaintiff by letter at Grand Ronde, and asked for
instructions..  Plaintiff replied on the twenty-seventh,
saying :   "I am at a loss as to the best course to pursue
in the matter.   I understand that there has been no
attachment issued on the bank at Sheridan.   The pre-
vailing opinion is that they will be able to make satisfac-

tory arrangements as soon as J. M. Baldridge, the vice president of the U. S. Banking Co., returns from the East, which will take place in a few days. However, if you think best, hold the check; if not, return to me. Any advice you can give me will be greatly appreciated." Defendants received the reply on the thirtieth, and on the thirty-first sent a letter to plaintiff, of which the following is a copy: "We have written to the Bank of Sheridan that they return the check for $1,500 which we sent to them for collection for you, as requested. They replied to us that the sheriff was in charge at present, and they could not do it. We herewith hand you the check for $1,500 which they remitted for your check, and we think that you had better take it, as it is the evidence of your claim against the bank, and go to Sheridan, and see what you can do in the matter of getting your money." Plaintiff had $1,717.71 on deposit with the banking company at the date of his check. The company closed its doors January 24. It had cash on hand, January 20, $2,726.25; January 21, $2,891.50; January 23, $2,973.71; January 24, $2,265.42. On February 3 plaintiff assigned his said deposit to Paul Fundman for the purpose of collection, who thereupon sued the company, attached its property, and subsequently procured judgment; but, owing to prior attachments, the first of which was issued January 26, was unable to secure anything thereon. At the time the defendant forwarded the check to the banking company, it was in good standing, and had theretofore paid all demands promptly. The defendants had no correspondent at Sheridan, but a reliable express agency and another bank were located there, the latter of which had been doing business but a short time, and defendants did not appear to have had any knowledge of its existence. The defense is set up that the check in question was a plain,

ordinary one, without indorsements; that defendants undertook and agreed to collect the same in accordance with the custom and ordinary method by which such collections were made by banks; that there was no agreement by which they were to receive compensation for their services; that, in attempting to collect said check, they pursued the general and universal custom obtaining among banks in Portland and elsewhere, and that by reason thereof they were not chargeable with negligence. As a second defense, it is alleged that plaintiff ratified defendants' said acts by accepting the draft remitted to them by the banking company, and retaining the same for more than a year without making any claim for negligence against the defendants. Trial was had before the court, and, judgment being for defendants, plaintiff appeals.

                                        Affirmed.

For appellant there was a brief and an oral argument by *Messrs. O. H. Irvine* and *O. P. Coshow.*

For respondent there was a brief over the name of *Williams, Wood & Linthicum,* with an oral argument by *Mr. Stewart Brian Linthicum.*

Mr. Chief Justice Wolverton, after stating the facts, delivered the opinion of the court.

The question presented is whether the defendants were guilty of negligence in forwarding plaintiff's check direct to the bank upon which it was drawn, and in retaining the evidence of indebtedness until it had closed its doors, and its property had been seized on attachment. The instrument was a plain, ordinary check, unindorsed, save as it may have been indorsed by the defendants prior to forwarding the same for collection and return.

The engagement of the defendants was to collect and issue a certificate of deposit for the proceeds, drawing interest. There is some controversy as to whether the defendants were to receive any compensation for their services; but the very terms in pursuance of which they undertook the collection would indicate that they were to receive a sufficient consideration to make them liable for neglect of the duty enjoined upon them. They were to have the use of the money when collected, upon which they intended to pay the plaintiff interest; and this, we are impelled to believe, would be sufficient within itself. Generally speaking, it can make no difference that a bank makes no direct charge for its services in collecting, for the benefits which it ordinarily and usually derives from the use of the funds while in its custody, and the advantages which may arise from business associations, are held and deemed to be adequate consideration for the undertaking, and quite sufficient upon which to predicate the liability incident thereto: *Merchants' National Bank* v. *Goodman*, 109 Pa. St. 422 (58 Am. Rep. 728, 2 Atl. 687); *Bailie* v. *Augusta Savings Bank*, 95 Ga. 277 (51 Am. St. Rep. 74, 21 S. E. 177); *Titus* v. *Merchants' National Bank*, 35 N. J. Law, 588. In the ordinary transaction, where a check is given and received in payment of a demand, the discharge of the demand is conditional upon the honor and payment of the check when presented in due course of established business usages, sanctioned by law; but failure to present it to the drawee for payment within the proper time, depending upon the proximity of the payee and the drawee to each other, and to notify the drawer of nonpayment, will discharge the drawer's obligation to the extent of his loss by reason of such failure of demand and notice: *Gregg* v. *George*, 16 Kan. 546. It is said: "A check differs from a bill of exchange in several particulars. It has no days of grace, and re-

quires no acceptance distinct from prompt payment.
The drawer of the check is not a surety, but the prin-
cipal debtor as much as the maker of a promisory note.
It is an absolute appropriation of so much money in the
hands of the banker to the holder of the check, and there
it ought to remain until called for, and the drawer has
no reason to complain of delay, unless upon the inter-
mediate failure of his banker. By unreasonable delay
in such a case the holder takes the risk of the failure of
the person or bank on which the check is drawn :'' 3
Kent, Comm. *104, note 2.

The rule governing the time in which the holder is
required to present a check in order to relieve himself
from the risk of loss by failure of the drawee may be
stated as follows : If the payee receives the check in
the same place where the bank upon which it is drawn
is located, he may present it for payment at any time
before the close of banking hours of the next secular
day, and thereby maintain recourse against the drawer.
If, in the meantime, the bank fails, the loss will be the
drawer's. The term "secular day" is used to exclude
Sunday, so that, if the check be received on Saturday,
the payee would have all day on the Monday following
in which to make the presentment. But, if the payee
receives the check in a place distant from where the
drawee bank is situated, it will be sufficient for him to
forward it by post, on the next secular day after it is
received, to some person at the latter place, who is re-
quired to present it for payment on or before the next
day after it reaches him in due course of mail. These
periods, depending upon the location of the respective
participants, which are declared requisite for the con-
venient presentment of a check, are deemed to have
been contemplated by the drawer, and he remains abso-
lutely liable, although the bank might fail pending their

duration : 2 Daniel, Neg. Inst. §§ 1590, 1592; *Farwell v. Curtis*, 7 Biss. 160 (Fed. Cas. No. 4,690). The allowance of a day, however, in which to present the check does not extend to an agent who receives one for the debt of his principal. Such a check must be presented with due and proper diligence ; otherwise, it is at the peril of the party retaining it and postponing presentment, as between him and the person in whose interest he is acting : *Smith* v. *Miller*, 43 N. Y. 171 (3 Am. Rep. 690) ; *Anderson.*v. *Gill*, 79 Md. 312 (25 L. R. A. 200, 47 Am. St. Rep. 402, 29 Atl. 527). The rules in respect to giving notice of the dishonor of a check are the same as where a bill of exchange or promissory note is involved. If anything, however, by reason of the intention of the parties to the instrument that the payment should be immediate, and of the fact that it is drawn against a deposit, they are to be more strictly construed and enforced in the case of a check than of other commercial paper : Tiedeman, Com. Paper, § 442.

The parties agree that at the time the transactions which form the basis of the present controversy took place there existed, and still exists, among the banks in Portland and elsewhere a general and well established custom to the effect that when a bank or banker receives for collection an ordinary check against an account with a bank or banker, situated and doing business at a place distant from where the collecting bank is located, and such collecting bank has no agent or correspondent at the place of the drawee bank, for the collecting bank to forward the check by mail directly to the drawee bank for collection and returns ; and that it is also a general and well established custom among such banks that when a bank or banker receives from a bank or person at a distance, for collection and return, an ordinary check, drawn upon a bank situated at the same place as the re-

ceiving bank, for the receiving bank not to remit cash to the bank or person from whom such check was received, but to remit the check or draft either of the receiving or drawee bank, drawn upon the correspondent of such receiving or drawee bank at the place from which the original check was forwarded, payable to the order of the bank or person from whom the check was received. It is contended by the respondents that these customs are to be considered the law of the case, and are controlling for the government of the parties; and that, measured thereby, the defendants are not chargeable with negligence for pursuing the course adopted in endeavoring to make the collection. Upon the other hand, it is maintained that the custom of sending the check direct to the drawee bank for collection and return is unreasonable, and, therefore, that it does not and cannot obtain the sanction of law, and that such an act is negligence *per se*, which will, in case loss should occur by reason thereof, render the collecting bank liable therefor. The reason assigned is that the collecting bank thereby makes the drawee bank its agent for presentment, demand, protest, and giving notice of nonpayment to the indorsers, if any, and the drawer; and that the duties thus devolving upon such an agent are inconsistent, and incapable of being performed by the drawee of the check, as it is said he cannot present a demand to himself, or demand payment of himself, much less protest his own paper, and give notice to the proper parties that he has refused payment. There exist two different theories among the courts of this country touching the responsibility of banks undertaking collections of commercial paper at a distance. One line of authorities holds to the rule that the forwarding bank is liable only for the selection of a suitable local agent with whom to intrust the collection, and that the agent so selected becomes the agent of the owner of the

paper; while, on the other hand, it is held that the forwarding bank makes the local agent its own subagent, and is liable for any neglect on the part of such subagent. But it is argued that in either event the defendants are liable, as, under the latter rule, they became absolutely responsible for the conduct of the Sheridan Bank, while, under the former, it was negligence *per se* to have selected the Sheridan Bank as agent for the purpose of consummating the collection. It does not appear to us, however, to be necessary to the determination of the present controversy that either rule should be adopted or applied. The check in question was drawn payable to the defendants, and was unindorsed by any one, so that there were no indorsers or third parties in the transaction to be subserved, and protest and notice thereof were unnecessary and not required. The defendants, therefore, assumed the simple duty of presenting the check for payment, under the rules of law obtaining, and, if not paid, or payment was refused, of notifying the drawer, so that he might not suffer loss by reason of the failure of the drawee bank.

In *Prideaux* v. *Criddle,* L. R. 4 Q. B. 455, it is said: "A presentment through the postoffice is a reasonable mode of presentment; it is a very common mode, and having regard to the commercial business of this country, it may be said to be a proper mode of presentment. If the drawee dishonors the check, and the holder sends a notice of dishonor to the person from whom he received the check on the day following that on which the check was dishonored, each previous transferrer has one day in which to give notice of dishonor." In *Bailey* v. *Bodenham,* 16 C. B. N. S. 288, ERLE, C. J., was inclined to think that a check sent through the post to the drawee was a good presentment, and he says: "But, unless the money was remitted by return of post, the absence of

an answer should have been considered as a dishonor, and notice of such dishonor should have been given promptly." In *Heywood* v. *Pickering*, L. R. 9 Q. B. 428, where the check was sent to the drawees direct, with demand for payment, BLACKBURN, J., thought it to be a good presentment for payment, and that the refusal to remit constituted an actual dishonor of the check. QUAIN, J., in the same case, says: "There is ample evidence that, according to the custom of bankers, when a foreign check is paid to a banker by a customer, that is the usual mode of transmitting checks. Is that a good presentment? In *Bailey* v. *Bodenham*, ERLE, C. J., and BYLES, J., thought that sending a check by post to a banker might be a good presentment of a check; and in *Prideaux* v. *Criddle*, LUSH, J., was of opinion that a presentment through the postoffice was a reasonable mode of presentment. Therefore, we have it that, in the present case, there was a due presentment of the check according to these authorities." As supporting this position, see, also, 2 Daniels, Neg. Inst. § 1559.

These are English cases, it is true, but a like manner of presentment seems to have received recognition in this country. In the case of *Indig* v. *National City Bank*, 80 N. Y. 100, a note, unindorsed, payable at the Bank of Lowville, was placed in the hands of defendant for collection, who, instead of sending it to an agent or correspondent at Lowville for presentment, sent it by mail directly to the Lowville Bank. It was remarked that such a method appeared to be the ordinary one for the transaction of such business, and the defendant was bound only to adopt the ordinary mode, and that the practice was sanctioned by the English cases. It was there contended that by sending the note direct to the Lowville Bank the collecting bank thereby constituted the Lowville Bank its agent; but it was held that, in

so far as it related to the presentment of the note at the bank, and the duties of the bank in respect to it, it was equivalent to a check drawn by the maker upon the bank where the note was payable.  As the case bears some analogy to the one at bar, we may be pardoned if we quote somewhat at length from the opinion of RAPALLO, J.  He says: "The bank owed a duty to its customer to pay it on presentation, if in funds.  The defendant used the United States mail to make the presentment, and by this means caused it to be presented to the bank for payment on the day when due.  It did not deposit it there for collection.  If there had been indorsers, it might be argued that the defendant constituted the Bank of Lowville its agent to notify the indorsers of nonpayment; but even this is very questionable, for it was held in a similar case that, if the proceeds were not remitted, the paper should be deemed dishonored, and notice of nonpayment should be given by the bank which had sent it: *Bailey* v. *Bodenham*, 16 C. B. N. S. 288.  No such question arises, however, in the present case, for there were no indorsers.  The defendant, by sending the note to the Bank of Lowville, requested it to pay it, not to receive the proceeds.  The object of sending was to extract money from the bank, as agent of the maker of the note, not to put money in the bank as agent of the defendant, or to the credit of the defendant.  There is nothing in the nature of the transaction which should render the defendant guarantor of the solvency of the Bank of Lowville.  *  *  * The bank on which the note is drawn has nothing to do but to pay the note if in funds, and, if not, to refuse to pay.  If it pays, it does so on behalf of the maker, and no relation is created between it and one who presents it by mail different from that which would exist if presented through any other agency, unless accompanied

by a request to do some further act in behalf of the sender beyond complying with its duty to its own customer.''

And in *Briggs* v. *Central Nat. Bank*, 89 N. Y. 182 (42 Am. Rep. 283), the same learned judge, in explanation of the opinion rendered in the Indig Case, says: ''The point of the decision is that the mere act of presenting the paper for payment by mail, instead of employing a messenger to present it, does not constitute the drawee · agent of the sender to receive or hold the proceeds.'' To the same effect, see also *People* v. *Merchants' Bank*, 78 N. Y. 269 (34 Am. Rep. 532). It will be noted that the presentment in the case of *Heywood* v. *Pickering* was in accordance with the custom then prevailing, and the one in the Indig Case was in pursuance of the ordinary method; and the custom in the one case and the method in the other were very similar to the one which it is agreed by the parties exists among the banks of Portland and elsewhere, and they seem to have been considered as controlling, and as legalizing the presentment in the respective manners there adopted. Mr. Tiedeman, in his work on Commercial Paper (§ 444), says: ''A custom has grown up of late to send the check direct to the bank on which it is drawn; in other words, to make presentment by mail. The sufficiency of this method of presentment has been doubted, but it seems that this method is more or less commonly adopted, and the weight of authority is in favor of its sufficiency.'' In the light of these authorities, we are constrained to hold that the transmission of the check in question by the defendants direct to the Sheridan Bank, through the post, for collection and return, operated as a good presentment for payment. A custom which obtains so generally and universally among men of the highest order of business sagacity appeals strongly to the understand-

ing for recognition, and, unless demonstrated to be clearly and palpably unreasonable and unjust, it ought to be adopted as the law of the case. It is true, the admittedly prevailing custom or usage exists and applies as well to certified checks, certificates of deposit, and notes payable at the banks ; but we are here dealing with a simple, unindorsed check, and are only called upon at this time to sanction the custom or usage in so far as it may be potent as affecting the present exigencies. However, there is authority for the sanction of it to the full extent prevailing, as denoted by the agreement of the parties here : *Farmers' Bank & T. Co.* v. *Newland*, 97 Ky. 464 (31 S. W. 38); *Jefferson County Sav. Bank* v. *Commercial Nat. Bank*, 98 Tenn. 337 (39 S. W. 338).

Usages are presumed to be reasonable, and in considering them the courts do not so much determine whether they are supported by satisfactory grounds as whether they are necessarily unreasonable. The party attacking the usage or custom has, therefore, the burden of the controversy, as the question to be decided in a particular case is not whether the usage is reasonable, but whether it is unreasonable : 27 Am. & Eng. Enc. Law (1 ed.), 766.

Cases are cited and relied upon by the the appellant, wherein it is held to constitute an act of negligence, and even negligence *per se*, for the collecting bank to send paper direct to the drawee bank, located at a distant place, for collection and return. The most conspicuous of these are : *Merchants' National Bank* v. *Goodman*, 109 Pa. St. 422 (58 Am. Rep. 728, 2 Atl. 687); *German National Bank* v. *Burns*, 12 Colo. 539 (13 Am. St. Rep. 247, 21 Pac. 714); *Anderson* v. *Rodgers*, 53 Kan. 542 (27 L. R. A. 248, 36 Pac. 1067); *Drovers' National Bank* v. *Anglo-American Provision Co.*, 117 Ill. 100 (57 Am. Rep. 855, 7 N. E. 601); *Farwell* v. *Curtis*, 7 Biss. 160 (Fed. Case

No. 4,690); *Whitney* v. *Esson*, 99 Mass. 308 (96 Am. Dec. 762); *First National Bank* v. *City National Bank*, 14 Tex. Civ. App. 318 (34 S. W. 458); *First National Bank* v. *Fourth National Bank*, 6 C. C. A. 183 (56 Fed. 967, 16 U. S. App. 1); *Bailie* v. *Augusta Savings Bank*, 95 Ga. 277 (51 Am. St. Rep. 74, 21 S. E. 717). But in no one of these cases was there a general and universal custom relied upon to support the act of the collecting bank, as there is here. The case of *Whitney* v. *Esson, supra*, comes the nearest. The paper involved was a draft, and it is there said : "It is not a reasonable usage that one who collects a draft for an absent party should be allowed to give it up to the drawee, and sacrifice the claim which the owner may have on prior parties, upon the mere receipt of a check, which may turn out to be worthless." But this must be read in connection with the agreement of the parties in that case, which was that it was a common practice for holders of drafts or checks to accept the check of the drawee in exchange for the draft, but it was not claimed to be a generally established usage. In *Farwell* v. *Curtis, supra*, it was said the practice of sending checks by mail to the drawee was not usual, thereby indicating that no such custom or usage was there established or relied upon. In *Drovers' National Bank* v. *Anglo-American Provision Co.*, 117 Ill. 100 (57 Am. Rep. 855, 7 N. E. 601), a custom was sought to be established, but it was not broad enough, as remarked by the court, to include the certified check which formed the basis of the action. And in *First National Bank* v. *City National Bank*, 12 Tex. Civ. App. 319 (34 S. W. 458), the statement of the case shows it did not appear that the owners of the paper, by consent or usage, authorized the forwarding of their draft direct to the drawee. These cases involve, indiscriminately, ordinary checks, certificates of deposit, certified checks, and drafts. Upon principle it would

seem that the usage is not an unreasonable one, in so far, at least, as it may apply to the collection of a plain unindorsed check. If payment of such check is refused, the payee may sue the drawer for breach of contract; but the drawer only can sue the drawee, and this upon the implied contract to pay upon demand. The bank of deposit has but a simple duty to perform when the paper is presented for payment only, and that is to honor it by compliance with the demand; so that the manner of presentment and demand for payment, whether over the counter or through the post, cannot affect the discharge of such duty. In no sense can it become the agent of the party presenting it, or of the drawer, by acting in the discharge of its duty in honoring it, and making payment. Where a party employs a bank to make a collection at a place distant from where the bank is located, and nothing is said touching the specific manner of making the same, it must be presumed it was intended by the customer of the bank that the collection would be made in the usual and ordinary manner, and in accordance with the general usage and custom prevailing among banks. If the collection is made in accordance therewith, the bank has performed its undertaking: *Farmer's Trust Co.* v. *Newland*, 97 Ky. 464 (31 S. W. 38); *Jefferson County Savings Bank* v. *Commercial National Bank*, 98 Tenn. 337 (39 S. W. 338).

Now, to recur to the facts: The plaintiff had on deposit with the Sheridan Bank $1,717.71. Of this fund he proposed sending $1,500 to the defendants, in Portland, for the purpose of making a time deposit with them, drawing interest. He informed the Sheridan Bank of his intention to draw upon it for that amount, and, as a means of having the money transmitted to Portland, he drew his check in favor of the defendants. They, in pursuance of the custom, sent it by mail to the

Sheridán Bank for collection and return. This must be considered a demand upon that bank for payment, and it had but a simple duty to perform, which was to pay ; and this it should have done, not as the act of either the defendants or the plaintiff, but for itself ; and therefore it could not have been the agent of either in the performance of such duty. The failure to pay upon presentment and demand was a refusal to pay, and a dishonor of the check, and the defendants, not having received payment thereof by return mail (having regard for the business hours of the banking company and the arrival and departure of the mails), should have so treated it, and notified the plaintiff thereof by the following mail, or, at least, by the mail of the following day. It was the duty of the defendants, they not being in a condition to sue the drawee, to notify the plaintiff at once of the dishonor of his paper, so that he could have brought an action against it, if he so desired, for the recovery of his deposit. But the case was not presented upon the theory that the loss to plaintiff was caused by the negligence of defendants in failing to notify him of the dishonor of his paper. By this, however, we do not intimate that the facts as disclosed by the record would support such theory.

The specific charges of negligence are that defendants sent the check direct to the drawee bank for collection, and retained the evidence of indebtedness until after the bank had closed. Upon the first ground we have seen that the act of sending the check direct to the drawee for collection was not negligence, under the usage and custom prevailing, and in the light of defendants' undertaking ; and, upon the second ground, it is plain that plaintiff could not have been injured by the retention of the check, as he was enabled to and did sue without it. In this view, the question of ratification becomes unim-

portant. The findings of fact are full upon all the issues made, and amply support the conclusions of law. The judgment will therefore be affirmed.

<div align="right">AFFIRMED.</div>

<div align="center">Decided 13 January, 1896; rehearing denied 10 April, 1899.