Spear, J.
It is shown by the record that the certificate of deposit issued by the Middleport bank to Trickett, and mailed by him to the Toronto bank on September 20, 1906, was received by the Toronto bank on September 22, 1906. The letter accompanying the certificate stated that it was “for deposit in your bank to my credit,” and requested that the bank send deposit slip and two or three checks. The deposit slip which the bank sent Trickett on September 22 contained this: “Deposited by J. A. Trickett checks as follows $1,400.00,” and the accompanying letter acknowledged receipt of the certificate (mistakenly called a check), “for which we have given your account credit.” The amount ($1,400.00) was then placed to the credit of Trickett on the bank’s book. On September 22, 1906, the bank mailed the certificate to the First National Bank of Pittsburg, Pennsylvania, that bank being a regular correspondent of the Toronto bank and being a bank in a city where, under the banking laws, the Toronto bank was required to keep its reserve, and the nearest reserve city. The Toronto bank had no correspondent bank at Middleport, and the sending of the certificate to the Pittsburg bank for collection was the usual and customary way of making such collections by banks in the *296 locality of the Toronto bank. The certificate was received by the Pittsburg bank, by regular course of mail, on Monday, September 24, and on the same day that bank mailed the certificate to the Bank of Middleport for payment, along with other claims for collection. September 26 the Bank of Middleport mailed to the Pittsburg bank a draft on a Cincinnati bank covering the certificate and other claims, which draft, on presentation for payment, was dishonored. September 27, 1906, the Middleport bank made an assignment for the benefit of creditors, and in October following bankruptcy proceedings were commenced against it and its affairs subsequently settled in the bankruptcy court. Dividends amounting to $419.61 were paid on a claim based on the certificate. Other than this amount the certificate remains unpaid. Two checks drawn by Trickett on the Toronto bank were paid by that bank, one dated September 29 by New York draft on October 1, 1906, for $250, and one, later, for $5. The amount of the certificate was.charged back to Trickett soon after learning of the failure of the Middleport bank, which crediting in the first instance and charging back was the customary and ordinary method of keeping such accounts by banks in that vicinity. Trickett’s checks ($250 and $5) were paid by the bank, apparently supposing the certificate to be good and supposing Trickett to be good, and that he would make it right. The bank had never before done business with Trickett, although the firm was somewhat acquainted with him personally. Being advised by the bank of the dishonor of the certificate Trickett, under date of October' *297 5, 1906, wrote the bank this: “I have used up all the draft you sent me and will try and think some way to pay you back,” undoubtedly referring to the draft received for his $250 check of 29th September.
Coming now to some legal aspects of the case, the first question relates to the admission over objection of evidence offered by plaintiff at the trial for the purpose of showing that the bank, or its alleged agent the Pittsburg bank, had been guilty of negligence which prevented collection of the certificate, and that plaintiff had been prejudiced thereby. We are of opinion that the evidence was incompetent and that its admission was prejudicial' error. No such claim was made in the ■ petition, nor, indeed, is such allegation contained in the reply, that pleading seeming to still adhere to the averment of • the petition with respect to a deposit, the language being that plaintiff did not leave the certificate for collection, but for deposit. Many changes have been made as to pleadings by legislation enacted since the code of 1853 was adopted and marked liberality is shown by legislative enactments in the matter of amendments. But all the ancient landmarks have not been swept away. It still remains the duty of the plaintiff to state his case in his petition, and it still remains the right of the defendant to be apprised by the petition of the facts which are believed to constitute the plaintiff’s cause of action. If the statement of the petition of plaintiff be true, the charge of negligence was wholly irrelevant; if plaintiff had a cause of action .based upon negligence he should have stated in his petition the facts justifying such *298 claim in order that defendants might have opportunity to traverse such allegations; and the admission in the reply that it was a certificate and not money that he forwarded to the bank did not change the issue, nor even intimate a charge of negligence. It must be borne in mind at the outset of the inquiry respecting liability that the question is not whether or not the Pittsburg bank, in case it was negligent, would be liable to the Toronto bank, but whether or not the Toronto bank is liable to Trickett. Had there been in fact a deposit of money, as alleged, the relation of debtor and creditor would have been at once established. But the delivery of the certificate in the manner shown by the admitted facts was a delivery for collection; of course to result in liability on the part of the bank in case of collection, and imposing the duty of reasonable diligence in efforts to collect. In short the plaintiff, by the act of sending the certificate, made the bank his agent for the collection of the certificate. In doing so he must be held to have assented to the usual procedure of banks in making such collections, provided such procedure is reasonable, and the burden of proving the usual methods unreasonable is upon the party complaining. It is the rule of reason, sustained by sufficient authority, that the party is charged with knowledge of the general custom of banks in the matter of collection of commercial paper, and must be assumed, in the absence of other instructions, to have intended that the bank will perform the duty imposed upon it in the usual and customary way. Farmers’ Bank v. Newland, 97 Ky., 464; 5 Cyc., 504. Indeed this principle is so *299 well recognized that courts will take judicial notice that nearly all the banks of the country transact money affairs by exchange with other banks by the use of checks, drafts, and certificates, and without the actual handling of banknotes or coin, and this is so well known that no business, man should be allowed to profit by pleading ignorance of it. But aside from the rule of judicial notice of the general customs and usages of banks, the record in this case shows that it was the general custom for banks in the vicinity of Toronto to send commercial paper for collection to their correspondents at Pittsburg. Therefore there could not reasonably be any charge of negligence against the Toronto bank because of the transmission of the certificate to the Pittsburg bank. A leading case on this proposition is Savings Bank v. National Bank, 98 Tenn., 337, where it is held that: “One who chooses a bank as a collecting agent impliedly agrees that the agency may be performed in accbrdance wi^h such reasonable methods prevailing at the place of collection as have ripened into usage, not in conflict with the general law, although he has no knowledge of their existence.” The plaintiff, having constituted the Toronto bank his agent for the collection of the certificate, imposed no other obligation on that bank than to select a proper agency to effect such collection. It certainly cannot be assumed that the plaintiff expected, or had a right to expect, that the Toronto bank would send a messenger to Middleport, a place two hundred miles away, to demand payment of the certificate over the counter of the Middle-port bank. This proposition is distinctly held in *300 Wilson v. Bank, 187 Ill., 222, and in a number of other cases, and if it be correct then there is nothing in the record to show that the sending of the certificate to the Pittsburg bank was not a reasonable and prudent act done in proper time and in conformity with bank usages.
It is assumed by counsel for defendant in error that, by transmission of the certificate to the Pitts-burg bank, that bank was constituted the agent only of the Toronto bank and not of the payee of the certificate, the plaintiff. This proposition is supported by the case of Reeves v. State Bank of Ohio, 8 Ohio St., 465, but the view we take of other features of the case, to be treated later, renders it unnecessary to further consider either the proposition or the case cited. On the strength of this authority the defendant in error contends that the Pittsburg bank was the agent of the Toronto bank only. But that question is not of importance, as we have already found that the Toronto bank was not guilty of negligence in forwarding the certificate to the Pittsburg bank, and only in case the latter bank itself is found to have been guilty of negligence, is the question of any consequence.
It is insisted by counsel for defendant in error that the mailing of the certificate by the Pittsburg bank direct to the Middleport bank for payment was itself negligence, and there are authorities which condemn the practice. But it is proven to be customary among banks, and a number of authorities sustain the custom. Among many we cite Indig v. Bank, 80 N. Y., 100; Wilson v. Bank, supra; Kershaw v. Ladd, 34 Ore., 375; 5 Cyc., 506, *301 507; Bolles Moderó Law of Banking, 548-9. • And so in this case the usages and customs availed of by the ‘plaintiff justified the sending of the certificate direct to the bank which issued it, there being no other bank at that point. The plaintiff having knowledge there was but one bank in Middleport, and that- the certificate was to be collected without .expense to him through the medium of business usages and customs in force between banks, ought not to be permitted to accept the facilities thus afforded by the bank for his accommodation, and then insist that compliance with such customs by the bank should constitute negligence. We think the claim that the custom was unreasonable, as applied to the -situation where there is but one bank in the place of payment, is not sustained by the record.
It appeared that there were banks at Pomeroy, a few miles distant, to which the certificate-might have been sent. It doesn’t appear that any such bank, had it received the certificate, would have done other than the Pittsburg bank did; and, irrespective of that, if such rule is to be applied, what would be the limit as to distance? Manifestly the point lacks force. And, speaking of the Pomeroy banks, one cannot but wonder why the plaintiff did not avail himself of facilities afforded by one of those banks in making deposit of his money and obtaining a certificate, if that was the form of indebtedness he desired, instead of sending the certificate to a bank with which he had never done business, located two hundred miles away from his home, and thus impose upon such bank the responsibility of collecting the certificate, rather than to *302 impose that responsibility upon one of the nearby banks. The transaction was unusual at least.
It is insisted that it was negligence for the Pittsburg bank to receive in satisfaction of the check a draft on another bank in lieu of the money. There appear to be two answers to this. One that the record does not show that the Cincinnati draft was received in satisfaction of the certificate. On the contrary, the draft was received, as shown by the entire evidence, in accordance with the usual custom of banks, as conditional payment only; although the term “payment” is used by the witness; that is, in satisfaction provided the draft should be paid. Such is the custom and such is the law. Checks do not operate as payment only by express agreement. In the absence of such agreement a worthless check or draft does not pay a debt Fleig v. Sleet, 43 Ohio St., 53.
It was incumbent upon the plaintiff below to establish by evidence not only that the Toronto bank, or some agent of that bank responsible to plaintiff, had been guilty of negligence in its effort to collect the certificate, but also that such negligence worked loss to him. In this we think the record shows that he failed. In the examination of the affairs of the Middleport bank in the bankruptcy proceeding it was disclosed that the bank was, not only when the assignment was made (September 27), but for some time before, in fact insolvent. There is, therefore, nothing to show that the certificate would have been paid in money had it been presented in person by a messenger, for, in the ordinary course of business the messenger would have been tendered, and would have *303 accepted, a draft such as was sent to the Pittsburg bank. The fact that the bank doors were still open on the 26th September does not warrant the conclusion that it then had funds sufficient to pay the certificate in money. It must be remembered that the burden of proving his .loss by negligence is upon the plaintiff. We think he did not sustain it.
Applying the severest test, it is this: was it understood between the parties that a sub-agent was to be employed by the Toronto bank in effecting a collection? It certainly was so understood by the bank or it would not have sent the certificate to the Pittsburg bank, and it was equally so understood by Trickett, or he would not, as he did, immediately on learning that the certificate had not been paid, have promised the bank to make good to the amount of the two hundred and fifty dollar check which the bank had advanced to him in the form of a New York draft. This establishes that if the Toronto bank pursued, as we find it did, the usual course, no negligence on its part is shown, and, as we have found, the Pittsburg bank was not negligent in its efforts to collect the certificate.
For error in admitting incompetent evidence and in applying the wrong rule of law to the facts, the judgments below will be reversed and the cause remanded to the court of common pleas for further proceedings according to law.

Reversed.

Davis, C. J., Shauck, Johnson, Donahue and O’Hara, JJ., concur.